James R. Batchelder (CSB # 136347)
Andrew T. Radsch (CSB # 303665)
James F. Mack (CSB # 322056)
Nancy N. Attalla (CSB # 341070)
**ROPES & GRAY LLP**
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303-2284
Telephone: (650) 617-4000
james.batchelder@ropesgray.com
andrew.radsch@ropesgray.com
james.mack@ropesgray.com
nancy.attalla@ropesgray.com

Additional counsel on signature page

*Attorneys for Plaintiff and Counterclaim Defendant*
*YANGTZE MEMORY TECHNOLOGIES COMPANY, LTD.*
*and Counterclaim Defendant*
*YANGTZE MEMORY TECHNOLOGIES, INC.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| YANGTZE MEMORY TECHNOLOGIES COMPANY, LTD., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:23-cv-05792-RFL |
| MICRON TECHNOLOGY, INC., and MICRON CONSUMER PRODUCTS GROUP, LLC, | ) **COUNTERCLAIM DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| Defendants. | ) |
| MICRON TECHNOLOGY, INC., | ) Hearing Date: April 23, 2024 |
| Counterclaim Plaintiff, | ) Time: 10:00 a.m. |
| v. | ) Place: Courtroom 15 |
| YANGTZE MEMORY TECHNOLOGIES COMPANY, LTD., and YANGTZE MEMORY TECHNOLOGIES, INC., | ) Judge: The Hon. Rita F. Lin |
| Counterclaim Defendants. | ) |

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that Counterclaim Defendants Yangtze Memory Technologies Company, Ltd. ("YMTC") and Yangtze Memory Technologies, Inc. ("YMTI") respectfully move for an order dismissing the counterclaims filed by Micron Technology, Inc. ("Micron") in Defendants' Answer to First Amended Complaint and Counterclaims, ECF No. 35. The hearing on this Motion shall take place on April 23, 2024, at 10:00 a.m. in Courtroom 15 on the 18th Floor of the above-entitled Court located at 450 Golden Gate Avenue, San Francisco, CA 94102.

YMTC and YMTI respectfully request that the Court dismiss Micron's counterclaims pursuant to Rule 12(b)(6) because Micron has failed to state a claim for relief as to every cause of action asserted in the counterclaims.

This motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, and upon such other documentary and oral evidence or argument as may be presented at the hearing on this Motion.

Dated:    March 12, 2023

ROPES & GRAY LLP

By:    /s/ Andrew T. Radsch

Andrew T. Radsch
Attorney for Counterclaim Defendants
YANGTZE MEMORY TECHNOLOGIES
COMPANY, LTD. and YANGTZE MEMORY
TECHNOLOGIES, INC.

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED ................................................................. 3

RELEVANT FACTUAL ALLEGATIONS ........................................................................ 3

ARGUMENT ........................................................................................................................ 6

I.    Legal Standards ....................................................................................................... 6

    A.    Motion to Dismiss Under Rule 12(b)(6) ..................................................... 6

    B.    Patent Infringement and Remedies .............................................................. 6

        1.    Direct Infringement Under § 271(a) ................................................ 7

        2.    Direct Infringement Under § 271(g) ................................................ 7

        3.    Induced Infringement Under § 271(b) ............................................. 7

        4.    Marking Requirement Under § 287 .................................................. 9

II.   The Court Should Dismiss Micron's Counterclaims Because Micron Does Not Plead Sufficient Facts for Those Claims ........................................................................... 9

    A.    Micron Has Failed to Plead Sufficient Facts to State a Claim for Direct Infringement Under § 271(a) That Is Plausible on Its Face .......................... 9

    B.    Micron Has Failed to Plead Sufficient Facts to State a Claim for Direct Infringement Under § 271(g) That Is Plausible on Its Face ........................ 12

    C.    Micron Has Failed to Plead Sufficient Facts to State a Claim for Induced Infringement Under § 271(b) That Is Plausible on Its Face ........................ 12

        1.    Micron has not plausibly pleaded that YMTC or YMTI had knowledge of the Asserted Patents or their alleged infringement thereof ........ 13

        2.    Micron has not plausibly alleged that YMTC or YMTI has induced another to infringe ......................................................................... 15

    D.    Even if Micron Had Stated Some Plausible Claim for Infringement, Because It Has Not Pleaded Compliance with The Marking Statute, Its Has Failed to State a Claim for Infringement Before the Filing of Its Counterclaims .... 20

    E.    Because It Has Failed to State a Claim for Infringement, Micron Also Has Failed to State a Claim for Willful Infringement ....................................... 21

CONCLUSION .................................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
   876 F.3d 1350 (Fed. Cir. 2017).........................................................................................20

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
   950 F.3d 860 (Fed. Cir, 2020)......................................................................................9, 20

*Asahi Glass Co. v. Pentech Pharms., Inc.*,
   289 F. Supp. 2d 986 (N.D. Ill. 2003) ...................................................................................1

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................6, 10, 11, 16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................ *passim*

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
   681 F.3d 1323, 1339 (Fed. Cir. 2012).................................................................................8

*Conformis, Inc. v. Zimmer Biomet Holdings, Inc.*,
   No. 19-1528-RGA, 2022 WL 1909386 (D. Del. June 3, 2022)........................................10, 11

*Crown Pack. Tech., Inc. v. Rexam Beverage Can Co.*,
   559 F.3d 1308 (Fed. Cir. 2009).......................................................................................20

*DSU Med. Corp. v. JMS Co.*,
   471 F.3d 1293 (Fed. Cir. 2006).......................................................................................13

*Express Mobile, Inc. v. Liquid Web, LLC*,
   No. 1:18-cv-01177-RGA, 2019 WL 1596999 (D. Del. Apr. 15, 2019)..................................20

*Garrett v. TP-Link Research Am. Corp.*,
   No. 20-cv-03491-SI, 2020 WL 5517202 (N.D. Cal., Sept. 14, 2020) ...........................6, 10, 14

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049, 1055 (9th Cir. 2008) ...................................................................................6

*Google LLC v. Sonos, Inc.*,
   C20-06754 WHA, 2022 WL 195850 (N.D. Cal. Jan. 21, 2022) .......................................13, 14

*Insituform Techs., Inc. v. Cat Contracting, Inc.*,
   161 F.3d 688 (Fed. Cir. 1998).........................................................................................13

ii

*Int'l Rectifier Corp. v. Samsung Elecs. Co.*,
    361 F.3d 1355 (Fed. Cir. 2004).................................................................................7

*Largan Precision Co. v. Genius Elec. Optical Co.*,
    86 F. Supp. 3d 1105 (N.D. Cal. 2015) ......................................................................8

*Lifetime Indus. v. Trim-Lok, Inc.*,
    869 F.3d 1372 (Fed. Cir. 2017)...................................................................8, 13, 14, 15

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009).................................................................................18

*Masimo Corp. v. Sotera Wireless*,
    No. 19-CV-01100-BAS-NLS, 2020 WL 2306587 (S.D. Cal. May 8, 2020).....................15, 17

*Merial Ltd. v. Cipla Ltd.*,
    681 F.3d 1283 (Fed. Cir. 2012).................................................................................9

*Microsoft Corp. v. AT&T Corp.*,
    550 U.S. 437 (2007)....................................................................................................7

*Microsoft Corp. v. DataTern, Inc.*,
    755 F.3d 899 (Fed. Cir. 2014)....................................................................................8

*NTP, Inc. v. Research in Motion, Ltd.*,
    418 F.3d 1282 (Fed. Cir. 2005).................................................................................11

*Ortiz & Assocs. Consulting v. Vizio, Inc.*,
    No. 3:23-CV-00791, 2023 WL 7184042 (N.D. Tex. Nov. 1, 2023) .......................................21

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    843 F.3d 1315 (Fed. Cir. 2016)...........................................................................7, 8, 15

*Skyworks Sols., Inc. v. Kinetic Techs., Inc.*,
    No. 14-cv-10-SI, 2015 WL 881670 (N.D. Cal. Mar. 2, 2015) .................................................17

*Sonos, Inc. v. Google LLC*,
    591 F. Supp. 3d 638 (N.D. Cal. 2022), *leave to appeal denied*, No. 2022-134,
    2022 WL 1486359 (Fed. Cir. May 11, 2022) ....................................................................8, 13

*Syngenta Crop Prot., LLC v. Willowood, LLC*,
    944 F.3d 1344 (Fed. Cir. 2019)...........................................................................7, 12

*Viavi Sols. Inc. v. Platinum Optics Tech. Inc.*,
    No. 5:21-cv-06655-EJD, 2023 WL 6795417 (N.D. Cal., Oct. 13, 2023).....................8, 18, 19

*Warner–Lambert Co. v. Apotex Corp.*,
    316 F.3d 1348 (Fed. Cir. 2003).................................................................................16

iii

*Ziptronix, Inc. v. Omnivision Techs., Inc.*,
   71 F. Supp. 3d 1090 (N.D. Cal. Oct. 21, 2014) ........................................................12

**Statutes**

35 U.S.C § 154(a)(1)........................................................................................................7

35 U.S.C. § 271 ...................................................................................................... *passim*

35 U.S.C. § 287 ...................................................................................................3, 9, 20

**Other Authorities**

Federal Rule Of Civil Procedure 12(b)(6) .................................................................2, 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Before a "case should be permitted to go into its inevitably costly and protracted discovery phase," "some threshold of plausibility must be crossed at the outset." *Asahi Glass Co. v. Pentech Pharms., Inc.*, 289 F. Supp. 2d 986, 995 (N.D. Ill. 2003) (quoted by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)).  Micron's counterclaims for patent infringement do not cross that threshold. As a result, they should be dismissed.

Micron's counterclaims for direct infringement do not cross the threshold of plausibility. Direct patent infringement reaches only those activities occurring *in the United States*.  To state a claim for infringement, Micron was required to plead sufficient facts demonstrating that it is plausible—not merely possible—that YMTC and YMTI make, use, sell, offer to sell, or import the Accused Products *in the United States*.  Micron did not do so.  Micron admits that the Accused Products are not made in the United States.  And with respect to the other statutorily proscribed activities of using, selling, offering to sell, and importing, Micron's counterclaims repeat the same conclusory allegation that parrots the elements of the cause of action.  But the law is clear:  that is not enough.

Where Micron does plead any facts—rather than only conclusions—those facts do not plausibly support a claim for direct infringement against YMTC or YMTI.  For example, Micron alleges that it purchased, from third party e-commerce websites, third party products which allegedly incorporate an Accused Product.  But those alleged facts do not plausibly (let alone possibly) establish that *YMTC* or *YMTI* sold the Accused Products in the United States, or even imported, offered to sell, or used them in the United States.  As one of the world's leading 3D NAND companies, if YMTC or its subsidiary, YMTI, had sold the Accused Products in the United States, presumably Micron would have cited evidence of that occurring.  It did not.  And that omission is telling.  Because Micron has not sufficiently pleaded that YMTC or YMTI performed any infringing acts in the United States, Micron's direct infringement claims under 35 U.S.C. § 271(a) and (g) should be dismissed.

Micron's claims for induced infringement also do not cross the threshold of plausibility, for two independent reasons. First, Micron does not plead facts showing that it is plausible that YMTC or YMTI had pre-filing knowledge of the Asserted Patents or the alleged infringement thereof. Rather, Micron pleads in only conclusory fashion that YMTC and YMTI knew of the Asserted Patents. And even then, Micron does not aver that either YMTC or YMTI knew of the alleged infringement by others of those patents. Moreover, where Micron does plead facts about YMTC's or YMTI's knowledge, those facts establish only that YMTC or YMTI knew of other Micron patents—not the Asserted Patents. Again, the law is clear: that is not enough.

Second, Micron fails to plead facts plausibly establishing that YMTC or YMTI in fact induced another to infringe. That is, Micron does not plead facts that plausibly establish that YMTC or YMTI possessed the required specific intent to induce infringement by another and took deliberate steps to encourage another to infringe. Again, each of Micron's patent infringement counterclaims recites only conclusory allegations about YMTC's or YMTI's active inducement of another. And where Micron does plead any facts, they fall far short of establishing a plausible claim. For example, Micron cites a general English-language YMTC webpage and the presence of YMTI employees in the United States, but Supreme Court and other precedent make clear that allegations about such generic commercial activities do not plausibly suggest wrongdoing. Accordingly, Micron's counterclaims of induced infringement under 35 U.S.C. § 271(b) must also be dismissed.

Independent of the foregoing shortcomings of Micron's counterclaims, Micron also does not plead that it has complied with the marking statute and, as such, has failed to state a claim for pre-filing damages (the only pre-filing remedy) as to four of the five Asserted Patents. This is an additional, independent reason to dismiss as to those four patents.

Finally, there can be no claim for willful infringement without a predicate claim for infringement. Because Micron's claims for direct and indirect infringement should be dismissed, so too should Micron's claims of willful infringement be dismissed.

YMTC and YMTI respectfully request that all of Micron's counterclaims in its Counterclaim Complaint (ECF No. 35) be dismissed under Rule 12(b)(6).

2

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the Court should dismiss Micron's claims for direct patent infringement under 35 U.S.C. § 271(a) where Micron has not pleaded with sufficiency that YMTC or YMTI has made, used, offered for sale, or sold the Accused Products within the United States, or imported the Accused Products into the United States.

2.      Whether the Court should dismiss Micron's claims for direct patent infringement under 35 U.S.C. § 271(g) where Micron has not pleaded with sufficiency that YMTC or YMTI has imported into the United States, or offered for sale, sold, or used within the United States, a product made by a process patented in the United States.

3.      Whether the Court should dismiss Micron's claims for inducement of patent infringement under 35 U.S.C. § 271(b) where Micron has not pleaded with sufficiency that YMTC or YMTI had the requisite knowledge, or that with specific intent to induce others to infringe, YMTC or YMTI took any active steps to encourage another to infringe.

4.      Whether the Court should dismiss Micron's counterclaims with respect to any alleged pre-filing infringement by YMTC or YMTI where Micron has failed to plead compliance with the marking statute, 35 U.S.C. § 287, and so cannot recover damages prior to its filing of the counterclaims, and where the Federal Circuit has held that dismissal of such claims is appropriate in such circumstances.

5.      Whether the Court should dismiss Micron's claims for willful patent infringement where Micron has not sufficiently pleaded a claim for infringement at all.

**RELEVANT FACTUAL ALLEGATIONS**

YMTC is headquartered in China and maintains a principal place of business in Wuhan, China. *See* Defendants' Answer to First Amended Complaint and Counterclaims, ECF No. 35, Counterclaims (¶¶ 1-83) ("Counterclaim Complaint") at ¶ 13; YMTC's First Amended Complaint for Patent Infringement, ECF No. 29 ("First Amended Complaint"), ¶ 12.  YMTC is a manufacturer of 3D NAND technology in China.  *Id*.  YMTI is a wholly-owned subsidiary of YMTC.  First Amended Complaint, ¶ 12; Counterclaim Complaint, ¶ 28.  Micron does not allege that YMTC and YMTI are

mere alter egos such that their corporate separateness may be disregarded.  And while Micron does allege that YMTC and YMTI "commit[] the acts of infringement . . . together as one enterprise," and that YMTC controls YMTI, Micron alleges no facts in support of either allegation.  *Id.*, ¶¶ 1, 28.

Micron alleges that YMTC and YMTI directly and indirectly infringe five patents.[1]  *Id.*, ¶¶ 33-83.

With respect to direct infringement under § 271(a), Micron repeats the same allegation for each count of its counterclaims: "[t]he YMTC Entities infringe at least claim 1 of the [asserted] patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by using, offering for sale, selling, and/or importing into the United States, without authorization, the YMTC Accused Storage Products."[2]  *Id.*, ¶¶ 36, 46, 57, 67, 77.  Micron does not allege that YMTC or YMTI directly infringes by making that Accused Products in the United States; rather, it avers that the Accused Products are made "outside the United States," *id.*, ¶ 47.  Micron also does not allege sufficient facts in support of its allegations that YMTC or YMTI has sold in the United States an Accused Product; offered for sale in the United States an Accused Product; used an Accused Product in the United States; or imported into the United States an Accused Product.  Instead, Micron's counterclaims cite alleged sales by third parties Bigamart.com and Amazon.com of products produced by another third party, Lexar, which products Micron alleges contain an Accused Product.  *Id.*, ¶ 21 & Exs. 28-30.  Micron does not, nor could it, allege that Bigamart.com, Amazon.com, or Lexar are alter-egos or agents of YMTC or YMTI, or otherwise allege that the alleged acts of Bigamart.com, Amazon.com, or Lexar can be attributed to YMTC or YMTI.

---

[1] U.S. Patent Nos. 10,475,737 (the "'737 patent"), 8,945,996 (the "'996 patent"), 8,803,214 (the "'214 patent"), 10,872,903 (the "'903 patent"), and 10,373,974 (the "'974 patent"), collectively referred to herein as the "Asserted Patents."

[2] Micron's counterclaims define the "YMTC Accused Storage Products" as YMTC's 64-layer 3D NAND products, including the X1-9050 and X2-9060 products; 128-layer 3D NAND products, including the X2-6070 product; and 232-layer 3D NAND products, including the X3-9060, X3-9070, and X3-6070 products.  *Id.*, ¶ 20.  For simplicity, YMTC and YMTI use the phrase "Accused Products" herein to refer to the YMTC Accused Storage Products.

**MOTION TO DISMISS COUNTERCLAIMS**    **CASE NO. 3:23-CV-05792-RFL**

As to the asserted '996 patent, which contains only method claims (directed to forming circuitry components or an array of memory cells), *id.*, Ex. 3 at 11:15-14:29, Micron also alleges that YMTC and YMTI directly infringe under § 271(g), *id*, ¶ 47.  Specifically, Micron alleges that "[t]he YMTC Entities infringe at least claim 1 of the '996 patent under 35 U.S.C. § 271(g), literally and/or under the doctrine of equivalents, by directly or indirectly importing into the United States the YMTC Accused Storage Products, which Products are made outside the United States using the patented process of at least claim 1 of the '996 patent, are not materially changed by subsequent processes, and are not a trivial and nonessential component of another product." *Id.*, ¶ 47.  As with its claims under § 271(a), Micron does not allege any facts in support of its allegations that YMTC or YMTI has imported into the United States an Accused Product.  *See id.*

Micron also alleges that YMTC and YMTI induce infringement of each of the Asserted Patents under § 271(b).  For each patent, Micron repeats the allegation that "[t]he YMTC Entities also actively induce infringement of at least claim 1 of the [asserted] patent under 35 U.S.C. § 271(b), and have done so since at least the filing of these counterclaims, by actively encouraging others to infringe (such infringement by others being by way of using, selling, offering to sell, or importing into the United States the YMTC Accused Storage Products)." *Id.*, ¶¶ 38, 49, 59, 69, 79.  While Micron alleges that YMTC and YMTI knew of Micron's patent portfolio generally, and that YMTC has been issued patents that cite certain Micron patents that are not the Asserted Patents, Micron does not allege facts showing that YMTC or YMTI knew of the specific Asserted Patents or of their alleged infringement thereof.  Micron also does not allege that YMTC or YMTI induced any specific third party to allegedly infringe.  With respect to its allegations of sales in the United States by third parties, Bigamart.com and Amazon.com, of another third party's products (Lexar) that allegedly incorporate the Accused Products, Micron does not allege any particular relationship between YMTC or YMTI and any of Bigamart.com, Amazon.com, or Lexar; does not allege that YMTC or YMTI knew that those third parties allegedly were selling in the United States products that incorporate an Accused Product; and does not allege any facts that would support any of the foregoing allegations, even if made.

1   With respect to each Asserted Patent, Micron also alleges that, "[s]ince at least the filing of
2   these counterclaims, the YMTC Entities' infringement has been willful." *Id.*, ¶¶ 41, 52, 62, 72, 82.
3   Micron does not allege any facts in support of that allegation. *See id.*

4   Finally, Micron does not allege that it has complied with the marking provisions of the Patent
5   Act. *See generally* Counterclaim Complaint.

6   **ARGUMENT**

7   **I.    Legal Standards**

8   **A.    Motion to Dismiss Under Rule 12(b)(6)**

9   To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient
10  factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*
11  *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "This 'facial plausibility'
12  standard requires the plaintiff to allege facts that add up to 'more than a sheer possibility that a
13  defendant has acted unlawfully.'" *Garrett v. TP-Link Research Am. Corp.*, No. 20-cv-03491-SI, 2020
14  WL 5517202, at *2 (N.D. Cal., Sept. 14, 2020) (granting a motion to dismiss patent infringement
15  claims) (quoting *Iqbal*, 556 U.S. at 678). "While legal conclusions can provide the framework of a
16  complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Accordingly,
17  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,
18  do not suffice." *Id.* at 678; *see also Twombly*, 550 U.S. at 557.

19  "In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in
20  the complaint and draw all reasonable inferences in favor of the plaintiff." *Garrett*, 2020 WL 5517202,
21  at *2 (citation omitted). "However, a district court is not required to accept as true 'allegations that
22  are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Id.* (quoting *In*
23  *re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)).

24  **B.    Patent Infringement and Remedies**

25  Section 154 of the Patent Act prescribes that "[e]very patent shall contain … a grant to the
26  patentee … of the right to exclude others from making, using, offering for sale, or selling the invention
27  throughout the United States or importing the invention into the United States, and, if the invention is

28

**MOTION TO DISMISS COUNTERCLAIMS**                    **CASE NO. 3:23-CV-05792-RFL**

a process, of the right to exclude others from using, offering for sale, or selling throughout the United States, or importing into the United States, products made by the process, referring to the specification for the particulars thereof." 35 U.S.C § 154(a)(1). Accordingly, "[i]t is the general rule under United States patent law that no infringement occurs when a patented product is made and sold in another country." *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 437 (2007).

### 1.    Direct Infringement Under § 271(a)

Direct patent infringement under § 271(a) occurs only if a person, "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." 35 U.S.C. § 271(a). "[T]he express language of . . . section 271(a)" does not "appl[y] to conduct outside the United States." *See, e.g., Int'l Rectifier Corp. v. Samsung Elecs. Co.*, 361 F.3d 1355, 1360 (Fed. Cir. 2004).

### 2.    Direct Infringement Under § 271(g)

Under § 271(g), "[w]hoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer." 35 U.S.C. § 271(g). As with infringement under § 271(a), infringement under § 271(g) applies only where the defendant has engaged in the proscribed conduct—using, selling, offering for sale, or importing—"within this country." *Syngenta Crop Prot., LLC v. Willowood, LLC*, 944 F.3d 1344, 1364 (Fed. Cir. 2019) ("[defendant] did not import into the United States or sell or offer for sale in the United States the [accused product]… We therefore affirm the district court's judgment that [Defendant] did not infringe the [asserted patent] under § 271(g).")

### 3.    Induced Infringement Under § 271(b)

The Patent Act also provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b).

A patentee asserting induced infringement under § 271(b) must show the following three elements: "(1) a third party directly infringed the asserted claims of the [asserted] patents; (2) [the accused infringer] induced those infringing acts; and (3) [the accused infringer] knew the acts it induced constituted infringement." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,

843 F.3d 1315, 1332 (Fed. Cir. 2016); *accord Viavi Sols. Inc. v. Platinum Optics Tech. Inc.,* No. 5:21-cv-06655-EJD, 2023 WL 6795417, at *4 (N.D. Cal., Oct. 13, 2023).  This requires "the patentee [to] show that the accused inducer took an affirmative act to encourage infringement."  *Power Integrations*, 843 F.3d at 1332 (quoting *Astornet Techs. Inc. v. BAE Sys., Inc.*, 802 F.3d 1271, 1279 (Fed. Cir. 2015)).  Specific intent is required.  "For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'"  *Lifetime Indus. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)).

A claimant must plead that the accused infringer knew of the patent; "[m]ere knowledge of a 'patent family' or the plaintiff's 'patent portfolio' is not enough." *Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 643 (N.D. Cal. 2022), *leave to appeal denied*, No. 2022-134, 2022 WL 1486359 (Fed. Cir. May 11, 2022).  A claimant must plead that the accused infringer took affirmative acts to encourage another party to infringe the patent, *Power Integrations*, 843 F.3d at 1332; it is not enough to merely plead that the third party itself infringed, *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014) ("Absent the knowledge and affirmative act of encouragement, no party could be charged with inducement.").  And a claimant must plead that the accused infringer had the specific intent to cause infringement, and knew that the acts were infringing, *Lifetime Indus.*, 869 F.3d at 1379; it is not enough to plead that the accused infringer sold the accused products to a foreign third party who then sold them throughout the world, including in the U.S.  *See Largan Precision Co. v. Genius Elec. Optical Co.*, 86 F. Supp. 3d 1105, 1118 (N.D. Cal. 2015); *Viavi Sols. Inc.*, 2023 WL 6795417, at *4 (describing *Largan* as holding that "even if [defendant] did induce [customers] Apple and Motorola to use its filters, it would still lack the requisite knowledge that the included [*sic*] acts constituted infringement because the products could be sold outside the U.S., i.e., not infringe the asserted patents.").

8

#### 4.    Marking Requirement Under § 287

A patentee must mark its patented product in order to collect damages prior to the filing of a claim of infringement where actual notice of infringement was not given. *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.,* 950 F.3d 860, 864 (Fed. Cir, 2020). "If, however, a patentee makes or sells a patented article and fails to mark in accordance with § 287, the patentee cannot collect damages until it either begins providing notice or sues the alleged infringer—the ultimate form of notice—and then only for the period after notification or suit has occurred." *Id.*

### II.    The Court Should Dismiss Micron's Counterclaims Because Micron Does Not Plead Sufficient Facts for Those Claims

Each of Micron's counterclaims should be dismissed for failure to state a claim because Micron does not plead sufficient facts to make those claims rise to the level of plausibility, as required by law.

#### A.    Micron Has Failed to Plead Sufficient Facts to State a Claim for Direct Infringement Under § 271(a) That Is Plausible on Its Face

Direct patent infringement under § 271(a) occurs only with respect to acts occurring within the United States. As the Federal Circuit has explained, "§ 271(a) includes express language limiting its scope to domestic acts: '[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, ***within the United States***, or imports ***into the United States*** any patented invention during the term of the patent therefore, infringes the patent.'" *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1302 (Fed. Cir. 2012) (quoting 35 U.S.C. § 271(a)). But Micron's counterclaims fail to plead any factual support for its allegations that YMTC or YMTI engage in any of those acts in the United States.

First, Micron does not allege that YMTC or YMTI "makes" the Accused Products in the United States. *See* Counterclaim Complaint, ¶¶ 36, 46, 57, 67, 77. Micron instead alleges the opposite—that the Accused Products are made outside the United States. *Id.*, ¶ 47.

Second, Micron's counterclaims are devoid of any factual support for its allegations that either YMTC or YMTI sells, offers for sale, or uses the Accused Products in, or imports them into, the United States, thus failing to state a claim for direct infringement that is plausible on its face. Instead, for each counterclaim of infringement, Micron recites the same conclusory allegation that is merely a

formulaic recitation of the cause of action: "[t]he YMTC Entities infringe at least claim 1 of the [asserted] patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by using, offering for sale, selling, and/or importing into the United States, without authorization, the YMTC Accused Storage Products." *Id.*, ¶¶ 36, 46, 57, 67, 77.   But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Elsewhere, Micron alleges in only conclusory fashion that YMTC and YMTI "directly and/or indirectly use, sell, offer for sale, import, supply, or otherwise distribute into the United States" the Accused Products, but again pleads no facts to support any one of those allegations.  Counterclaim Complaint, ¶¶ 16-18; *see also id.*, ¶ 21.  Such conclusory allegations are not accepted as true at the pleading stage, and do not suffice to state a claim for patent infringement.  *Twombly*, 550 U.S. at 557; *Garrett*, 2020 WL 5517202, at *2.

To the extent that Micron attempts to rely, as factual support for its allegations of direct infringement, on (1) its allegation that certain Lexar products contain the Accused Products, and (2) its exhibits that purport to show Bigamart.com and Amazon.com selling those Lexar products in the United States, that argument would lack merit.  *See* Counterclaim Complaint, ¶ 21 & Exs. 28-30.  None of Lexar, Bigamart, or Amazon is an alter ego of YMTC or YMTI, or is even related to YMTC or YMTI, nor does Micron allege that they are.  Moreover, Micron does not allege that those alleged sales were *by* YMTC or YMTI.  And the mere existence of an Accused Product in the United States— let alone one that has been integrated into a third party's product—is not plausible evidence of importation into the United States *by YMTC or YMTI*.  *See, e.g.*, *Conformis, Inc. v. Zimmer Biomet Holdings, Inc.*, No. 19-1528-RGA, 2022 WL 1909386, at *4 (D. Del. June 3, 2022) ("Nowhere does Conformis specifically allege infringing activity by Medacta International taking place in the United States, as required by § 271(a). . . .  Because Conformis has failed to specifically allege any infringing activity by Medacta International occurring in the United States, Conformis's claim of direct infringement by Medacta International is DISMISSED without prejudice.").

Similarly, Micron's allegation that YMTC has registered the YMTC trademark in the United States also does not plausibly allege an act of direct patent infringement in the United States.  *See*

Counterclaim Complaint, ¶ 21. Registering a trademark is, of course, not a patent-infringing act. Further, Micron does not allege that the products identified in the trademark application are Accused Products, and even if Micron did, Micron does not allege how the submission of a product photograph evidences direct infringement of a patent. The Court is not required to "reach beyond what is actually alleged," *Conformis*, 2022 WL 1909386, at *4, and Micron's strained factual allegations "do not permit the court to infer more than the mere possibility of misconduct."[3] *Iqbal,* 556 U.S. at 679. Because the allegations of direct infringement by YMTC or YMTI lack any factual support to make those claims plausible, not merely possible, they must be dismissed.

Micron's allegation of infringement under § 271(a) with respect to the asserted '996 patent must be dismissed for another reason, too. The '996 patent claims only methods of forming (i.e., ***making***) semiconductor circuitry components and memory cells. Counterclaim Complaint, Ex. 3. A method claim is infringed under § 271(a) only where an unauthorized person performs each method step in the United States. *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005) ("We therefore hold that a process cannot be used 'within' the United States as required by section 271(a) unless each of the steps is performed within this country."). But Micron does not allege infringement by way of making the Accused Products, nor could it since the Accused Products are made outside the United States. Counterclaim Complaint, ¶ 47. Micron instead pleads that YMTC and YMTI infringe under § 271(a) by "using, offering for sale, selling, and/or importing into the United States" the Accused Products. *Id.*, ¶ 46. Micron does not, however, plead any factual support—let alone provide any legal support—for how YMTC or YMTI could infringe, under § 271(a), a method of manufacture claim through the sale, offer for sale, use, or importation, of a ***product***. *Cf. NTP*, 418 F.3d at 1320 ("[T]he legislative history of section 271(a) indicates Congress's understanding that method claims could only be directly infringed by use."). Micron's claim is not only factually deficient, it is legally broken.

---

[3] Moreover, as explained below in Section II.D, Micron has no remedy for any alleged infringement occurring before the service of the Counterclaim Complaint because Micron did not plead compliance with the marking statute, further rendering irrelevant YMTC's submission of a trademark application four years ago.

**B.    Micron Has Failed to Plead Sufficient Facts to State a Claim for Direct Infringement Under § 271(g) That Is Plausible on Its Face**

Presumably because the asserted '996 patent claims only methods of forming circuitry components and memory cells, and Micron admits that the Accused Products are made outside of the United States, Micron also asserts direct infringement of that patent under § 271(g). Counterclaim Complaint, ¶ 47. As with direct infringement under § 271(a), infringement under § 271(g) applies only where the defendant has engaged in the proscribed conduct—using, selling, offering for sale, or importing the allegedly patented product—*in the United States*. *Syngenta*, 944 F.3d at 1364. As the Federal Circuit made clear in *Syngenta*, the infringing act under § 271(g) is the importing, using, offering to sell, or selling in the United States of the patented product—not the making of it outside the United States. *Id.* But, as explained in the previous section, Micron has alleged no facts to support its allegations that *YMTC* or *YMTI* imports, uses, offers to sell, or sells the Accused Products *in the United States*. That products which allegedly incorporate the Accused Products were purchased by Micron from third party websites, does not plausibly show that YMTC or YMTI imported, used, offered to sell, or sold the Accused Products within the United States. *See supra*, Section II.A; *see also Ziptronix, Inc. v. Omnivision Techs., Inc.*, 71 F. Supp. 3d 1090, 1099 (N.D. Cal. Oct. 21, 2014) (granting summary judgment of no direct infringement under § 271(g) because the Taiwanese defendant delivered the accused components to entities located in Taiwan, and a California corporation arranged for other companies in Asia to combine the components for subsequent importation into the United States).

Micron's factually bare allegations of YMTC's or YMTI's infringement under § 271(g) are insufficient to withstand a motion to dismiss.

**C.    Micron Has Failed to Plead Sufficient Facts to State a Claim for Induced Infringement Under § 271(b) That Is Plausible on Its Face**

Micron has also failed to plead a plausible claim for induced infringement under § 271(b). Its induced infringement pleading fails for two independent reasons. First, Micron fails to plead any facts that plausibly show that YMTC or YMTI had knowledge of the Asserted Patents, or the alleged

infringement thereof.  Second, Micron fails to plead any facts that plausibly show that YMTC or YMTI had the specific intent and did in fact encourage infringement by another.  Each of these shortcomings independently warrants dismissal.  *Lifetime*, 869 F.3d at 1379 ("For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'") (citation omitted).

### 1.    Micron has not plausibly pleaded that YMTC or YMTI had knowledge of the Asserted Patents or their alleged infringement thereof

To adequately plead inducement, Micron must plead sufficient facts to plausibly demonstrate that YMTC and YMTI had knowledge of the Asserted Patents, which is a "crucial element of induced infringement." *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 161 F.3d 688, 695 (Fed. Cir. 1998); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) ("The requirement that the alleged infringer knew or should have known his actions would induce actual infringement necessarily includes the requirement that he or she knew of the patent.").  Micron does not plead that it provided presuit notice of any Asserted Patent to YMTC or YMTI, but instead makes tangential allegations, none of which, alone or in combination, plausibly demonstrates that YMTC or YMTI had presuit knowledge of the Asserted Patents or the allegedly induced infringement thereof.  *See, e.g.*, *Sonos*, 591 F. Supp. 3d at 648 ("[T]he complaint will generally not be adequate to serve as notice for . . . indirect infringement.").

First, Micron alleges that YMTC and YMTI knew of Micron's patent portfolio and of other Micron patents that are not the Asserted Patents—but that is inadequate.  "[K]nowledge of a patent family or patent portfolio does not equate to knowledge of a specific patent." *Google LLC v. Sonos, Inc.*, C20-06754 WHA, 2022 WL 195850, at *2 (N.D. Cal. Jan. 21, 2022) (citation omitted).  Specifically, Micron alleges, for each of the Asserted Patents, the YMTC and YMTI "[s]ince before the filing of these counterclaims . . . had knowledge of MTI's patent portfolio with respect to 3D NAND technology and that portfolio's relevance and application to the YMTC Entities' own products."  Counterclaim Complaint, ¶¶ 39, 50, 60, 70, 80.  Elsewhere in its counterclaims, Micron

alleges that YMTC and YMTI knew that Micron has patents in the 3D NAND space and that YMTC's own patents cite to certain unasserted Micron patents, but ***not*** to the Asserted Patents. *Id.*, ¶ 31. These allegations suggest nothing more than YMTC and YMTI having knowledge of Micron's patent portfolio generally, which is insufficient to state a claim. *Google*, 2022 WL 195850, at *2. That none of YMTC's patents cite the Asserted Patents but instead cite only other patents does not plausibly suggest that YMTC or YMTI knew of the Asserted Patents—it suggests the opposite:  that it did not.

Second, as to the specific Asserted Patents, Micron alleges in only conclusory fashion that YMTC and YMTI "have direct knowledge of" those patents solely on account of "the large number of former Micron NAND engineers now working at the YMTC Entities."  Counterclaim Complaint, ¶ 32.  But Micron alleges no facts that would plausibly suggest that those engineers knew of the Asserted Patents.  "[A] district court is not required to accept as true 'allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'"  *Garrett*, 2020 WL 5517202, at *2 (quoting *In re Gilead*, 536 F.3d at 1055).  Moreover, Micron avers that it filed "dozens" of patents on 3D NAND before it even launched its first product back in 2015, Counterclaim Complaint, ¶ 11, and presumably has filed many more patents since.  That Micron has at least "dozens" of patents on 3D NAND technology further demonstrates that it would be an "unwarranted deduction[] of fact" to assume that the alleged ex-Micron engineers even knew of the Asserted Patents, let alone that they communicated that knowledge to YMTC or YMTI.  But even if Micron's conclusory allegations did plausibly suggest knowledge of the Asserted Patents, Micron still does not allege—in even conclusory fashion—that YMTC or YMTI knew of the alleged infringement of those patents.  Accordingly, Micron has failed to state a claim for induced infringement.  *Lifetime*, 869 F.3d at 1379 ("For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer '. . . knew that the [other party]'s acts constituted infringement.'") (citation omitted).

### 2. Micron has not plausibly alleged that YMTC or YMTI has induced another to infringe

A second, independent reason why Micron's counterclaims for inducement must be dismissed is that Micron fails to plead any facts to plausibly establish that YMTC or YMTI has actually induced another to infringe. Inducement requires both "an affirmative act" to encourage another party to infringe, *Power Integrations*, 843 F.3d at 1332, and the specific intent to cause infringement, *Lifetime Indus.*, 869 F.3d at 1379 ("For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent]....'") (citation omitted). Micron has not sufficiently pleaded either.

Micron's allegations throughout in its counterclaims, taken individually or as a collection, fail to plausibly suggest that YMTC or YMTI took affirmative acts or specifically intended others to make, use, sell, offer for sale, or import the Accused Products **in the United States**. Micron alleges that YMTC and YMTI "actively encourage others" to infringe. Counterclaim Complaint, ¶ 22. In support of that conclusory allegation, Micron cites only a YMTC website that Micron alleges "advertises" the Accused Products. *Id.* But Micron fails to identify any facet of that website that purports to encourage customers to make, use, sell, offer to sell, or import the Accused Products in the United States—in other words, to allegedly infringe—because none of it does.[4] Micron's allegations do not rise to the level of plausibility. Moreover, mere product marketing does not demonstrate the specific intent required for induced infringement, even at the pleading stage. *Masimo Corp. v. Sotera Wireless*, No. 19-CV-01100-BAS-NLS, 2020 WL 2306587, at *10 (S.D. Cal. May 8, 2020) (holding that plaintiff's "contention that [defendant] marketed and sold an allegedly infringing product cannot, standing alone,

---

[4] Elsewhere, Micron alleges the unremarkable fact that the "YMTC Entities make their website... available in the English language." Counterclaim Complaint, ¶ 23. An allegation that they make their website available in the world's most widely spoken language is not suggestive of a specific intent to induce customers to use the Accused Product in the United States—just one of the world's English-speaking countries. And normal commercial behavior does not plausibly suggest an intent to induce infringement. *Compare Twombly*, 550 U.S. at 557 (allegations of commercial behavior that are merely "consistent with" an illegal agreement in restraint of trade, do not plausibly suggest one, and are insufficient to withstand dismissal).

state a claim for active inducement without affirmatively alleging a defendant's intent to encourage infringement" and collecting cases).

Elsewhere, in each of its counterclaims of patent infringement, Micron recites identical allegations concerning inducement that are conclusory and devoid of any factual matter. But "a complaint *must* contain sufficient factual matter" to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (emphasis added). In particular, Micron alleges that "the YMTC Entities encourage, train, instruct, and provide support and technical assistance to others to directly infringe the [asserted] patent by contracting with, encouraging, and instructing third parties, including equipment and design manufacturers, device manufacturers, distributors, customers, and other third parties to use, sell, offer for sale, and/or import into the United States, the YMTC Accused Storage Products and products that incorporate the YMTC Accused Storage Products." Counterclaim Complaint, ¶¶ 40, 51, 61, 71, 81. That is a conclusory and factually bereft allegation that is entitled to no weight on a motion to dismiss. *See Iqbal*, 556 U.S. at 681 ("It is the conclusory nature of [plaintiff's] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.").

The following sentence in the counterclaims fares no better, as Micron alleges the following: "For instance, the YMTC Entities publish and provide technical materials, product specifications, and promotional literature for the YMTC Accused Storage Products that instruct and encourage the YMTC Entities' customers and other third parties to integrate the YMTC Accused Storage Products into products made, used, sold, offered for sale, and/or imported into the United States, and work with customers and potential customers to design their products using the YMTC Accused Storage Products with knowledge that those products will be used and sold in the United States." Counterclaim Complaint, ¶¶ 40, 51, 61, 71, 81. Again, this allegation is conclusory and devoid of any factual matter. For example, Micron does not identify any alleged "technical materials, product specifications, [or] promotional literature," or aver how those unidentified materials instruct or encourage YMTC's or YMTI's alleged customers to make, use, sell, offer to sell, or import the Accused Products—let alone encourage such alleged customers to undertake those acts within the United States, as would be required to infringe. *Cf. Warner–Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1364 (Fed. Cir. 2003)

16

("[M]ere knowledge of possible infringement by others does not amount to inducement; [rather,] specific intent and action to induce infringement must be proven.") (citation omitted); *Skyworks Sols., Inc. v. Kinetic Techs., Inc.*, No. 14-cv-10-SI, 2015 WL 881670, at *9 (N.D. Cal. Mar. 2, 2015) (granting summary judgment of no induced infringement by California corporation where plaintiff "has not provided evidence that [certain] datasheets induced Samsung or other customers to directly infringe by importing phones containing the accused parts into the United States or offering to sell phones containing accused parts to customers in the United States" and where "[t]he evidence that [plaintiff] cites fails to support even an inference that [U.S-based defendant] worked for months with Samsung's U.S. design groups to incorporate its infringing parts into Samsung phones designed specifically for the U.S. market"). If YMTC or YMTI "technical materials, product specifications, [or] promotional literature" existed that encouraged customers to use, import, sell, or offer to sell the Accused Products in the United States, presumably Micron would have cited them.

Next, Micron's allegation that YMTC and YMTI "specifically intended for their customers and end-users to use the YMTC Accused Storage Products in such applications and provide instructions and encouragement for the customers and end-users to do so," is defective for at least two reasons and does not state a claim for relief. *See* Counterclaim Complaint, ¶ 22. First, that allegation is bereft of any factual content; it is merely conclusory. And the "conclusory claim that [YMTC and YMTI] knew and intended the products to be used in an infringing manner does not state a claim that [they] knew [their customers and end-users] acts constituted infringement and specifically intended to encourage those acts." *Masimo*, 2020 WL 2306587, at *9. Second, an allegation that YMTC and YMTI encourage customers to use the Accused Products generally does not plausibly suggest an intent to encourage customers or end-users use the Accused Products in the United States specifically. At most, such allegation is merely "consistent with" an intent to encourage use in the United States—but that is insufficient to state a claim. *Twombly*, 550 U.S. at 557 ("The need at the pleading stage for allegations plausibly suggesting (***not merely consistent with***) [an illegal] agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w]' that the pleader is entitled to relief.'") (emphasis added).

1       *Twombly* is instructive because there, the Supreme Court held that to state a claim under § 1

2   of the Sherman Act, it was inadequate for a complaint to contain mere allegations of parallel conduct,

3   without some allegations that raise a suggestion of a preceding agreement. *Id.* at 556-557. That is

4   because "parallel conduct . . . could just as well be independent action," and without "further

5   circumstance pointing to a meeting of the minds, an account of a defendant's commercial efforts stays

6   in neutral territory." *Id.* at 557 ("An allegation of parallel conduct is thus much like a naked assertion

7   of conspiracy in a § 1 complaint: it gets the complaint close to stating a claim, but without some further

8   factual enhancement it stops short of the line between possibility and plausibility of 'entitle[ment] to

9   relief.'"). *Id.* Micron's description of YMTC's and YMTI's commercial efforts, *i.e.*, their alleged

10  encouragement of others to use the Accused Products, likewise "stays in neutral territory," as that

11  description lacks any further allegation that plausibly suggests specific intent to induce infringement.

12      That YMTC and YMTI allegedly consider the United States an important market does not fill

13  the void in Micron's pleading. *See* Counterclaim Complaint, ¶ 29. For example, in *Viavi*, it was

14  undisputed that the United States was Viavi's customer's biggest market—yet that did not show intent

15  to induce as a matter of law. *Viavi*, 2003 WL 6795417, at *6. In comparison, Micron does not even

16  allege that the United States is the biggest market for YMTC or YMTI (or any of their customers).

17      Similarly, Micron's allegation that YMTC's products are "designed to comply with safety

18  standards required for sale or import into the U.S. market," Counterclaim Complaint, ¶ 23, is

19  insufficient to show intent to induce infringement (and, regardless, Micron's allegation is merely

20  conclusory, as it identifies no such standards). "The fact that the products are capable of infringing

21  because they meet certain specifications does not necessarily show requisite intent to induce." *Viavi*,

22  2023 WL 6795417, at *6 (citing *Skyworks Sols.*, 2015 WL 881670, at *8–10) and *Lucent Techs., Inc.*

23  *v. Gateway, Inc.*, 580 F.3d 1301, 1322 (Fed. Cir. 2009)). Tellingly, Micron does not allege what those

24  purported safety standards are, let alone whether they are unique to the United States, such that

25  compliance with them could be purposeful, or instead are the same as or similar to standards required

26  in other global markets where YMTC products may be sold.

27

28

**MOTION TO DISMISS COUNTERCLAIMS**         **CASE NO. 3:23-CV-05792-RFL**

Finally, Micron's allegation that YMTC and YMTI know that the Accused Products (and products incorporating them) are sold in the United States is, like the rest of its allegations, woefully deficient. *See* Counterclaim Complaint, ¶ 24. In support of that allegation of knowledge, Micron relies only on the alleged presence in the United States of two individuals it alleges are YMTC employees. *Id.*, ¶¶ 24-27. First, Micron points to Mr. David Duffin, who is employed by YMTI but who Micron incorrectly alleges, without evidentiary basis, is employed by YMTC. *Id.*, ¶¶ 24-27. And none of Micron's allegations about Mr. Duffin plausibly suggest that YMTC or YMTI know that the Accused Products are being sold in the United States. Micron alleges that Mr. Duffin "advertises that he is 'used to regularly and directly interacting with customers.'" *Id.*, ¶ 24 (citing Ex. 31). Not only does that statement come from Mr. Duffin's summary of his experience in the semiconductor industry generally, which spans many companies, and is not a statement about his particular experience at YMTI, *see id.*, Ex. 31, but a generic statement of interacting with customers does not plausibly suggest that YMTC or YMTI know where customers end up selling goods that incorporate the Accused Products, particularly where YMTC allegedly services multiple countries, *id*. ¶ 29. *See, e.g., Viavi*, 2023 WL 6795417, at *5 (finding no inducement as a matter of law where defendant did not know where its accused lenses "end up after they are sold to the module integrators"). It is also notable that Micron does not allege that YMTC or YMTI in fact have any U.S. customers.[5]

Second, Micron points to Mr. Daesik Song, a former Micron employee now at YMTI, but Micron's allegations provide no plausible support for Mr. Song having knowledge about purported sales of goods incorporating the Accused Products in the United States. Counterclaim Complaint, ¶ 27. That YMTI employs a former Micron engineer does not plausibly suggest an intent to induce infringement of the Asserted Patents.

---

[5] Micron also alleges that Mr. Duffin had a technical role at YMTC from 2016-2019, Counterclaim Complaint, ¶ 25, but it is unclear how that has any bearing on YMTC's or YMTI's alleged knowledge today. As discussed above, Micron does not plausibly allege that YMTC or YMTI had prefiling knowledge of the Asserted Patents or the alleged infringement thereof, and hence there could not have been any induced infringement by YMTC or YMTI so many years ago. Nor does Micron allege any facts that would suggest that any purported knowledge from 2019 remains valid and not stale five years later.

Because Micron insufficiently pleads actual inducement, Micron's claims of induced infringement must be dismissed.

**D.**    **Even if Micron Had Stated Some Plausible Claim for Infringement, Because It Has Not Pleaded Compliance with The Marking Statute, Its Has Failed to State a Claim for Infringement Before the Filing of Its Counterclaims**

Even if the Court were to determine that Micron had stated some claim for relief, at minimum, the Court should dismiss any claim for infringement before the filing of Micron's counterclaims for at least the '737 Patent, the '214 Patent, the '903 Patent, and the '974 Patent. Because Micron has not pleaded compliance with the marking statute for those patents, it cannot recover any damages for alleged infringement of them for the period prior to service of its Counterclaim Complaint.[6]

Where "a patentee makes or sells a patented article and fails to mark in accordance with § 287, the patentee cannot collect damages until it either begins providing notice or sues the alleged infringer—the ultimate form of notice—and then only for the period after notification or suit has occurred." *Arctic Cat,* 950 F.3d at 864*; Express Mobile, Inc. v. Liquid Web, LLC,* No. 1:18-cv-01177-RGA, 2019 WL 1596999, at *2 (D. Del. Apr. 15, 2019) (granting a motion to dismiss for failure to plead compliance with the marking statute) ("35 U.S.C. § 287(a) requires that a patentee who makes or sells a patented article mark the articles to recover past damages."). Micron did not provide presuit notice of alleged infringement to YMTC or YMTI, nor does Micron allege that it did. Accordingly, only service of the Counterclaim Complaint served as requisite notice. "There is no dispute that the patentee bears the burden of pleading and proving he complied with § 287(a)." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1367 (Fed. Cir. 2017); *see also Express Mobile,* 2019 WL 1596999, at *2 ("It is the patentee's burden to plead compliance with § 287(a).") (citation omitted). Micron has not pleaded such compliance. Therefore, Micron cannot collect damages prior to the filing of the Counterclaim Complaint for at least the '737 Patent, the '214 Patent, the '903 Patent, or the '974 Patent. As a result, it has failed to state a claim for pre-filing infringement for at least those

---

[6] The '996 patent contains only method claims, and thus the notice provisions of § 287 do not apply. *See Crown Pack. Tech., Inc. v. Rexam Beverage Can Co*., 559 F.3d 1308, 1316 (Fed. Cir. 2009).

patents.  *See, e.g.*, *Ortiz & Assocs. Consulting v. Vizio, Inc.*, No. 3:23-CV-00791, 2023 WL 7184042, at *3 (N.D. Tex. Nov. 1, 2023) (holding that as to pre-suit alleged infringement, because plaintiff "failed to state a claim for pre-suit damages, [plaintiff] has not stated a claim that is plausible on its face").

**E.      Because It Has Failed to State a Claim for Infringement, Micron Also Has Failed to State a Claim for Willful Infringement**

Micron alleges in conclusory fashion that YMTC and YMTI have willfully infringed the Asserted Patents.  Counterclaim Complaint, ¶¶ 41, 52, 62, 72, 82.  But for the reasons articulated above, Micron has failed to state a claim for direct or indirect patent infringement.  Without a claim for infringement, there can be no claim for willful infringement, and so Micron's claims willful infringement must be dismissed, too.

**CONCLUSION**

For the foregoing reasons, YMTC and YMTI respectfully request that the Court dismiss Micron's counterclaims.

Respectfully submitted,

Date: March 12, 2024                    By: */s/ Andrew T. Radsch*

James R. Batchelder (CSB # 136347)
Andrew T. Radsch (CSB # 303665)
James F. Mack (CSB # 322056)
Nancy N. Attalla (CSB # 341070)
**ROPES & GRAY LLP**
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303-2284
Telephone: (650) 617-4000
james.batchelder@ropesgray.com
andrew.radsch@ropesgray.com
james.mack@ropesgray.com
nancy.attalla@ropesgray.com

Rachael Bacha (NYB # 4817938)
1211 Avenue of the America
New York, NY 10036

Telephone: (212) 596-9062
rachael.bacha@ropesgray.com

Nicole S. L. Pobre (DCB # 1735421)
2099 Pennsylvania Avenue,
N.W. Washington, D.C. 20006
Telephone: (202) 508-4600
nicole.pobre@ropesgray.com

*Attorneys for Plaintiff and Counterclaim Defendant*
*YANGTZE MEMORY TECHNOLOGIES*
*and Counterclaim Defendant*
*COMPANY, LTD. AND YANGTZE MEMORY*
*TECHNOLOGIES, INC.*

## CERTIFICATE OF SERVICE

I hereby certify that this document is being served upon counsel of record for Defendant's

and Counterclaim Plaintiff on March 12, 2024, via electronic service.

*/s/ Andrew T. Radsch*
Andrew T. Radsch

**MOTION TO DISMISS COUNTERCLAIMS**                    **CASE NO. 3:23-CV-05792-RFL**