James R. Batchelder (CSB # 136347)
Andrew T. Radsch (CSB # 303665)
James F. Mack (CSB # 322056)
Nancy N. Attalla (CSB # 341070)
**ROPES & GRAY LLP**
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303-2284
Telephone: (650) 617-4000
james.batchelder@ropesgray.com
andrew.radsch@ropesgray.com
james.mack@ropesgray.com
nancy.attalla@ropesgray.com

Additional counsel on signature page

*Attorneys for Plaintiff and Counterclaim Defendant*
*YANGTZE MEMORY TECHNOLOGIES COMPANY, LTD.*
*and Counterclaim Defendant*
*YANGTZE MEMORY TECHNOLOGIES, INC.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| YANGTZE MEMORY TECHNOLOGIES COMPANY, LTD., <br><br> Plaintiff, <br><br> v. <br><br> MICRON TECHNOLOGY, INC., and MICRON CONSUMER PRODUCTS GROUP, LLC, <br><br> Defendants. | Case No. 3:23-cv-05792-RFL <br><br> **COUNTERCLAIM DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS COUNTERCLAIMS** <br><br> Hearing Date: April 30, 2024 <br> Time: 10:00 a.m. <br> Place: Courtroom 15 <br> Judge: The Hon. Rita F. Lin |
| MICRON TECHNOLOGY, INC., <br><br> Counterclaim Plaintiff, <br> v. <br><br> YANGTZE MEMORY TECHNOLOGIES COMPANY, LTD., and YANGTZE MEMORY TECHNOLOGIES, INC., <br><br> Counterclaim Defendants. | |

# TABLE OF CONTENTS

Page

I.   Micron's Failure to Mark, Coupled with Its Failure to Provide Pre-Suit Notice of Alleged Infringement, Moots its Claims of Pre-Filing Infringement ........................................ 1

II.  Micron Does Not Plead Plausible Direct Infringement Under § 271(a) ................................. 2

III. Micron Does Not Plead Plausible Infringement Under § 271(g) ............................................ 5

IV.  Micron Does Not Plead Plausible Inducement Under § 271(b) ............................................. 5

    A.   Micron Does Not Plead Plausible Requisite Knowledge ............................................ 5

    B.   Micron Does Not Plead Plausible Encouragement or Intent ....................................... 7

V.   Micron Does Not Plead Plausible Willful Infringement.......................................................... 10

VI.  Conclusion ................................................................................................................................ 10

In its Opposition to YMTC's and YMTI's Motion to Dismiss Counterclaims (ECF 50, "Opposition"), Micron asks the Court to ignore significant factual holes in the counterclaims' conclusory allegations. The Court should not do so. Micron's allegations do not have "enough heft" to survive, so they should be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

The factual paucity of Micron's allegations is not surprising, as Micron ***knows*** that YMTC/YMTI are not selling the accused 3D NAND products in the U.S. (or otherwise engaging in conduct that would infringe). Micron is one of two reported funders of an "advocacy" group named China Tech Threat, which masquerades "corporate messaging as grassroots advocacy," "take[s] a hard-line position on restriction of Chinese tech," and has "taken a hard line on Chinese semiconductor companies that compete with…Micron."[1] It is such "advocacy" that helped catalyze YMTC's placement on the Department of Commerce's Entity List in 2022. By prohibiting the "export" of "technology" by anyone in the U.S. to YMTC, the Entity List designation makes it impossible for YMTC to have technical discussions with potential U.S. customers about their products, effectively preventing YMTC from doing business here.[2] While the U.S. is a desirable market for any global company, but not every global company is able to sell its products in the U.S., or otherwise compete in the U.S. market—particularly where competitors engage in Micron's exclusionary brand of "advocacy." Having so effectively deployed such "advocacy" to prevent YMTC from competing against it in the U.S. market, Micron should not now be permitted to feign ignorance about that reality, asserting counterclaims based on the false premise that YMTC is engaging in the very U.S.-based commercial activity that Micron's "advocacy" has prevented.

**I.    Micron's Failure to Mark, Coupled with Its Failure to Provide Pre-Suit Notice of Alleged Infringement, Moots its Claims of Pre-Filing Infringement**

---

[1] Brody Ford, Bloomberg, "Dell, Micron Backed a Group Raising Alarms on Rivals' China Ties," Bloomberg (Jan. 25, 2024, 4:00 AM), https://www.bloomberg.com/news/articles/2024-01-25/dell-micron-backed-a-group-criticizing-chinese-rivals (attached as Exhibit A).

[2] The Department of Commerce has also made clear that it views as "red flags" purchases from listed entities, even if not a deemed "export," further curtailing YMTC's ability to do business here. *See* https://www.bis.doc.gov/index.php/component/fsj_faqs/faq/142-can-i-purchase-items-from-a-company-that-is-listed-on-the-entity-list (attached as Exhibit B).

Micron's concessions that it did not (1) plead that its products were marked (Opp. 16), or (2) give YMTC/YMTI pre-filing notice of alleged infringement (Opp. 12), means that Micron has no claim for ***pre-filing*** infringement under at least 35 U.S.C. § 271(a), because failure to mark renders pre-filing damages unavailable, or § 271(b), because inducement requires knowledge of the asserted patent and alleged infringement.  *See* Mot. 7-9, 13, 20.  And so, Micron's allegations about events that allegedly occurred years ago, in 2018 or 2020, cannot ***plausibly*** support a claim for infringement in 2024—particularly given the significant intervening events that Micron's own allegations reference, namely, the "export bans" imposed on YMTC in 2022 that have effectively prevented YMTC from undertaking U.S.-based commercial activity.   Counterclaim Compl., Ex. 26 (YMTC's "ascent has stalled since Washington announced broad, stringent curbs on exports of technology and gear for making advanced semiconductors, as well as restrictions on U.S. nationals providing support to Chinese chipmakers").  Especially given the severity of those intervening events, Micron's allegations of years-old conduct are too attenuated to support a claim for alleged infringement today.

In its Opposition (at 16), Micron attacks a strawman.  Contrary to Micron's suggestion, YMTC/YMTI do not argue that the entirety of Micron's claims must be dismissed because Micron failed to mark.  Rather, Micron's claim for ***pre-filing*** infringement must be dismissed.  Micron's attempt to distinguish *LiquidWeb* on the basis that the court did not dismiss the plaintiff's claim "in its entirety" is therefore misplaced.  *Id.*; *see Express Mobile, Inc. v. Liquid Web, LLC*, No. 1:18-cv-01177, 2019 WL 1596999, at *2 (D. Del. Apr. 15, 2019) (dissing claim for pre-filing damages).[3]

## II.     Micron Does Not Plead Plausible Direct Infringement Under § 271(a)

Micron's Opposition fails to demonstrate that its claims weave together a factually or legally

---

[3] Citing one out-of-district case that no other court cites, Micron incorrectly argues that past damages may be available for the '974 patent, despite Micron's assertion of an apparatus claim. Opp. 16 n.10.  In this District, any assertion of an apparatus claim triggers the marking requirement. *Unwired Planet, LLC v. Apple Inc.*, No. 13-cv-04134, 2017 WL 1175379, at *4 (N.D. Cal. 2017) (holding that it makes no "intuitive sense…to let the patentee's marking requirement stand or fall based on the course of litigation"); *Mformation Techs., Inc. v. Research in Motion Ltd.*, 830 F.Supp.2d 815, 837-38 (N.D. Cal. 2011) ("[I]n *Crown Packaging* the Federal Circuit clearly stated that the applicability of § 287(a) turns on which claims were asserted.") (citation omitted).  In any event, Micron has not "quickly withdrawn" its assertion of an apparatus claim.

1  plausible claim for direct infringement under § 271(a), particularly where Micron all but concedes that
2  it has no viable claim for pre-suit § 271(a) infringement due to its failure to mark.

3        As an initial matter, Micron does not address, let alone salvage, its factually and legally
4  deficient allegation of infringement under § 271(a) for the '996 patent.  *See* Mot. at 11 (explaining
5  how the '996 patent claims only methods of making a product, and Micron concedes that the accused
6  products are made abroad).  Accordingly, that claim should be dismissed with prejudice.

7        As to its remaining claims under § 271(a), none of Micron's allegations alone or together
8  plausibly—instead of merely possibly—suggests that YMTC or YMTI sells, offers for sale, imports,
9  or uses the accused products in the United States.  Micron's Opposition does not patch those holes.

10       Micron relies on just two allegations—a 2020 trademark registration, and a YMTI employee's
11 statements on LinkedIn summarizing his career since 1987—in a misguided attempt to show that
12 Micron plausibly pleads that YMTC/YMTI sells or offers to sell the accused products in the U.S.  Opp.
13 9-10.  YMTC's trademark registration does not list, identify, or otherwise refer anywhere to the
14 accused products, and Micron does not plead that it does (nor could it).  *See* Counterclaim Compl., ¶
15 21.  While the registration references "Xtacking," Micron's pleading confirms that Xtacking is a
16 technology, not a product.  *Id.*  Moreover, as Micron notes, *id.*, that registration was filed in 2020—
17 ***four years*** before Micron's filing of its counterclaims.  A four-year-old trademark registration that
18 does not identify the accused products does not plausibly suggest that YMTC/YMTI have sold or
19 offered to sell the accused products in the U.S., let alone do so today—again, especially in light of the
20 severity of the intervening events referenced above.  Adding Mr. Duffin's cited LinkedIn statements
21 does not change the outcome.  *See* Opp. 10.  Responsibility for "$5B+ in shipments per year" and
22 being "used to" regularly "interacting" with customers, does not plausibly state a claim for
23 infringement.[4]  That is particularly so when none of those statements mentions sales of the accused

---

[4] That Mr. Duffin is in California does not make it more plausible from the cited allegations that YMTC or YMTI have in fact sold or offered to sell (which requires at least price terms, as described *infra*) an accused product in the United States.  An attempt to serve the U.S. market does not plausibly establish success, particularly where, as Micron knows, YMTC's 2022 addition to the Entity List effectively prevented YTMC's ability to do business here.  Micron also knows that Mr. Duffin's "$5B+ in shipments per year" does not and ***could not*** refer to YMTC, but instead refers to Mr. Duffin's prior role at SanDisk, where Mr. Duffin worked under Micron's now-CEO, who was at

products, sales in the U.S., interactions with U.S. customers, or interactions that constitute an offer to sell an accused product.[5]  In the words of *Twombly*, those actions would be "consistent with…a wide swath" of legitimate commercial behavior, and such allegations do not "possess enough heft" to suggest wrongdoing.  *Twombly*, 550 U.S. at 554, 557.

Micron's reliance on *CalTech*, Opp. 10, is also misplaced.  While a U.S. sales cycle leading to a "design win" could trigger a U.S. sale, Micron ***does not*** allege that YMTC or YMTI engages in, let alone secured, any "design wins."  A "design win," as explained in *Carnegie-Mellon*, generally refers to "a customer's exclusive use of [a] designer's customized chip for a certain period."  *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1309 (Fed. Cir. 2015).  Of course, "marketing alone does not constitute infringement under § 271(a)."  *FutureLogic, Inc. v. TransAct Techs. Inc.*, No. 05-cv-03754, 2008 WL 11400763, at *26 n.185 (C.D. Cal. Mar. 3, 2008).

Micron's arguments about the "use" prong fare no better.  Again, Micron relies on just two allegations, which do not show plausible infringement.  First, Micron argues that YMTC "launched and showed its products" at a 2018 trade show.  Opp. 10.  That allegation is impermissibly conclusory because the cited documents do not reference the accused products; they state that YMTC launched and displayed its innovative Xtacking "architecture" and "technology."  *See id.*, Exs. 25, 37.  YMTC's novel Xtacking architecture involves features built at the nanometer (i.e., billionths of a meter) scale, and is not perceptible from viewing a memory chip.  It is, therefore, not reasonable to infer from a statement about launching a novel architecture, that YMTC displayed the products accused here—and it is not an act of infringement to display an architecture or discuss a technology.  Moreover, that alleged 2018 act does not plausibly support any alleged use in the U.S. in 2024, which Micron must show in view of its failure to mark.  Micron also relies on Mr. Duffin's prior role, ending March 2019

---

that time the CEO of SanDisk.  *See* Ex. 31 (identifying Mr. Duffin as VP at SanDisk from 2011-2016); https://en.wikipedia.org/wiki/Sanjay_Mehrotra (noting that Mr. Mehrotra, who is now CEO of Micron, was the President and CEO of SanDisk from 2011-2016).

[5] An offer to sell requires at least "a description of the allegedly infringing merchandise and the price at which it can be purchased."  *3D Sys., Inc. v. Aarotech Labs, Inc.*, 160 F.3d 1373, 1379 (Fed. Cir. 1998).

1  (i.e., five years ago), leading product, test, and assembly engineering. Opp. 10. But Mr. Duffin's cited LinkedIn page nowhere states that such testing was in the U.S. (it was not), *see* Ex. 31, and Micron does not plead that YMTC performs such product line testing in the U.S., thousands of miles from where the products are fabricated, because it knows such allegation would be false.

Finally, Micron's arguments about "importation" of the accused products similarly have insufficient heft for the same reasons described above. Micron relies on only its allegations about YMTC's 2020 trademark registration, 2018 launch of its award-winning architecture, and Mr. Duffin's role from 2016-2019, none or which alone or together establishes plausible importation of an accused product (today or in the past).

### III.     Micron Does Not Plead Plausible Infringement Under § 271(g)

Micron's Opposition acknowledges that its claim for infringement under § 271(g) rises or falls with the sufficiency of its "importation" allegations under § 271(a). Opp. 11. Because its importation allegations lack requisite heft, Micron's claim for § 271(g) infringement must be dismissed.

### IV.     Micron Does Not Plead Plausible Inducement Under § 271(b)

As with direct infringement, Micron's Opposition fails to demonstrate that it pleaded facts that support plausible induced infringement. Micron's cited cases are inapposite; none addresses whether a plaintiff sufficiently pleaded that a defendant, who makes the accused products abroad, actively induces acts in the U.S. that would infringe. On the other hand, Micron fails to address YMTC/YMTI's analogous cases, instead attempting to avoid them by arguing that they concern a different procedural posture—summary judgment. Opp. 16 n.9. But those cases cannot be so easily dismissed. If the adduced *evidence* does not support a claim for inducement, making summary judgment appropriate as a matter of law, then of course the same or similar *allegations* also cannot support a claim for inducement, making dismissal appropriate. *See, e.g.*, *Twombly*, 550 U.S. at 554, 557 (holding that where proof of parallel conduct would be inadequate to overcome summary judgment of no liability on a Sherman Act claim, mere allegations of parallel conduct fail to state a claim that is plausible). YMTC/YMTI's cases are directly on point, and they require dismissal.

#### A.     Micron Does Not Plead Plausible Requisite Knowledge

While the cases in this District are split on whether a complaint can provide requisite notice for inducement, *compare* Mot. 13 *with* Opp. 12., YMTC/YMTI submit that requiring a party have an actionable claim before filing that claim—as opposed to attempting to create a claim by filing suit—is the better approach more consistent with other areas of the law. *See Trimble Inc. v. PerDiemCo*, 997 F.3d 1147, 1154 (Fed. Cir. 2021) (noting that the Supreme Court "has repeatedly rejected special rules for patent litigation in [the] context of rules governing civil litigation generally"). But the Court does not need to resolve this intra-district split because, regardless of which authority is followed, Micron cannot establish that it pleaded plausible pre-filing knowledge, and thus cannot establish plausible pre-filing inducement. As a result, its allegations about acts that occurred years ago, before YMTC/YMTI allegedly were put on notice of their alleged infringement, are irrelevant.

While Micron briefly tries to justify its allegations of pre-filing knowledge, Opp. 12, that effort falls short. Micron relies on allegations that YMTC/YMTI knew of Micron's patent portfolio generally, not the asserted patents specifically, *see id.*, but fails to distinguish the law holding such allegations inadequate. *See* Mot. 8; *see also MasterObjects, Inc. v. Amazon.com, Inc.*, No. C 20-08103 WHA, 2021 WL 4685306, at *3 (N.D. Cal. Oct. 7, 2021) ("Allegations of general knowledge of a patent family, or a patent portfolio, are insufficient to allege specific knowledge of a particular patent."). Micron also cites its allegations that YMTC hired ex-Micron employees, but Micron's own cited case shows that Micron's pleading is inadequate. In *Lifetime*, the Federal Circuit held that a plaintiff adequately pleaded knowledge for inducement where plaintiff pleaded that defendant hired two of plaintiff's employees who had actual knowledge of the specific asserted patent and its scope. *Lifetime Indus.*, 869 F.3d 1372, 1380 (Fed. Cir. 2017). Here, in contrast, Micron does not allege (let alone allege with facts) that the alleged ex-Micron engineers knew of the asserted patents and their scope. Moreover, in *Lifetime*, plaintiff alleged that defendant began to allegedly infringe, by use of a new design, only after gaining knowledge from those two new hires. *Id.* at 1375, 1380. Micron makes no similar allegation here. Far from supporting Micron's position, the detailed allegations in *Lifetime* stand in sharp relief to the conclusory and factually bereft allegations here. Micron's failure to plead

plausible pre-suit knowledge is critical because none of the pre-suit acts that Micron alleges YMTC or YMTI engaged in could possibly—let alone plausibly—indirectly infringe.

### B. Micron Does Not Plead Plausible Encouragement or Intent

Micron also fails to show that it pleaded a plausible affirmative act coupled with specific intent to encourage another to directly infringe by, e.g., importing into, or using in, the U.S. the accused products, as required for inducement. *See* Mot. 15. While, as Micron notes (Opp. 13), it need not prove its case at the pleading stage, it must plead facts that make it plausible that YMTC or YMTI induced infringement—not that it is merely possible. Micron has not done so. It is not enough, as Micron suggests, to plead that YMTC or YMTI has encouraged customers to integrate the accused memory chips into their own products generally, because any such use of the accused products outside the United States would not infringe. Micron was required to plead facts showing it is plausible that YMTC or YMTI specifically encouraged or instructed customers to do so ***in the United States***—an allegation that Micron's pleading carefully avoids. *See* Mot. 16-18.

Micron again relies on Mr. Duffin's LinkedIn—but that allegation (alone or together with other allegations) does not establish plausible inducement. Mr. Duffin's alleged responsibility for $5B+ in shipment per year (which Micron knows does not pertain to YMTC) and regular "interact[ion]s" with customers, does not plausibly suggest that he encourages customers to import, sell, etc. (a) the specific accused products, (b) specifically in the U.S.—when such activity is equally consistent with non-accused behavior (e.g., encouraging customers to buy YMTC's products generally, for use anywhere). Allegations merely consistent with the alleged "wrongdoing" are, without more, insufficient. *Twombly*, 550 U.S. at 557. And extrapolating from an allegation that Mr. Duffin regularly interacts with customers and manages international sales, to an inference that he encourages customers to use the specific accused products specifically in the U.S.—and further that such customers in fact did so— is not reasonable. At best, that is one of many ***possible*** inferences—but mere possibilities are inadequate; plausibility is required.[6] *Twombly*, 550 U.S. at 557. A foreign company selling products

---

[6] Micron does not allege that Lexar is a U.S. brand, since Micron sold it to Chinese company Longsys in 2017. *See* https://sg.micron.com/legal.

to a foreign customer, even if at some later point those products are imported into the U.S., is insufficient to establish induced infringement—and Micron does not plead specific facts to infer more. *See* Mot. 17-19. Nor does the fact that Mr. Duffin resides in California reasonably suggest that he knows that the accused products are incorporated by customers into products that are allegedly later sold in the United States. Opp. 12-13. Micron pleads no facts about the supply chain for 3D NAND, let alone YMTC's accused products, that would reasonably suggest such omniscience. Indeed, that sort of inference is contrary to the court's holding in *Viavi*, a case that Micron fails to distinguish. *See* Mot. 18, 19.

Micron's next argument—that it was not required to plead any facts supporting its allegation that YMTC/YMTI "publish and provide technical materials, product specifications, and promotional literature"—is contrary to law. Opp. 14. Conclusory allegations are entitled no weight, and a complaint must recite sufficient "factual matter." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Garrett v. TP-Link Research Am. Corp.*, No. 20-cv-03491-SI, 2020 WL 5517202, at *2 (N.D. Cal., Sept. 14, 2020). Micron cites *Bot M8*, Opp. 14, but that decision does not address induced infringement and provides no support for Micron's argument that it was not required to plead supporting facts for its otherwise conclusory averment.[7] Micron also cites its Exhibit 38 (a YMTC webpage), apparently in the attempt to show that Micron pleaded some supporting facts. *See* Opp. 14. But even in its Opposition, Micron cannot explain how that YMTC webpage allegedly encourages customers to use the accused products specifically in the U.S., as would be required to infringe. And Micron does not dispute that mere product marketing is insufficient to state a claim. *See* Mot. 15-16.

---

[7] Micron's assertion that it is plausible that Mr. Duffin provided "such materials" in his "sales meetings with customers," or that YMTC provided "such materials" when it "launches" and "shows its products at trade shows," Opp. 14, is broken for many reasons. First, Micron fails to identify what "such materials" are, beyond its impermissibly conclusory allegation that lacks any factual detail. Second, Micron cites nothing to support its attorney argument that Mr. Duffin engages in "sales meetings with customers" in the U.S. And third, Micron attempts in its Opposition to expand, without support, its averment of a single trade show in 2018—six years before Micron provided notice of alleged infringement to YMTC/YMTI and therefore six years before YMTC/YMTI could have induced infringement—to plural "trade shows" where plural "products" were launched and displayed. Such un-pleaded attorney argument is entitled to no weight.

Contrary to Micron's argument, Opp. 14, YMTC/YMTI do not attempt to "downplay" either YTMC's website, or Micron's conclusory allegation of compliance with unidentified U.S. safety standards. Micron's sole basis for arguing that the YMTC website encourages customers to use, sell, or import products into the U.S. specifically, is that the website is in English. But that is not a *reasonable* inference when English is so widely spoken worldwide. And taking Micron's argument to its logical conclusion would mean that YMTC specifically intended customers to infringe in every country where English is spoken. *Twombly* was clear that allegations of standard business practice are inadequate to suggest wrongdoing. *Twombly*, 550 U.S. at 557. As to the pleaded compliance with U.S. safety standards, Micron argues that it was not required to identify any—but without such factual support, Micron is left with only a conclusory assertion that is entitled to no weight. *Iqbal*, 556 U.S. at 678; *Garrett*, 2020 WL 5517202, at *2.

Finally, Micron's attempts to infer inducement from YMTC's having participated in a 2018 "Flash Memory Summit" and maintenance of ties with Silicon Valley, also fall short. Opp. 15. Participating in a trade show six years ago does not reasonably suggest the requisite specific intent as of the filing of the Counterclaims, which is when Micron first provided the requisite notice for there to be inducement. Nor does Micron allege that such participation in fact resulted in a customer who used an accused product in the U.S. Moreover, even if somehow relevant today, that such trade show was held in the U.S., and not elsewhere, does not speak to YMTC's or YMTI's intent to serve a particular market; Micron does not, for example, allege that YMTC or YMTI organized that conference or selected its location. And finally, maintaining ties to Silicon Valley, where so many global technology companies have headquarters or significant offices, does not, without more, reasonably suggest that YMTC took active steps to encourage use of the accused products in the U.S., and that such efforts resulted in such use. Such "ties" are bereft of any specific allegation of "an affirmative act" to encourage another party to infringe. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016). Instead, Micron's generic allegations of YMTC's "commercial efforts stay[] in neutral territory" and fail to plausibly suggest inducement. *Twombly*, 550 U.S. at 557. This is all the more so where the only facts Micron pleads about the

9
REPLY ISO MOTION TO DISMISS COUNTERCLAIMS        CASE NO. 3:23-CV-05792-RFL

availability of the accused products in the U.S. concern Lexar branded products, and Micron knows that it sold Lexar to a Chinese company. *See supra*.

Finally, Micron relies heavily on *Apple v. AliveCor*, but that case is inapposite. Opp. 15-16. There, the complaint included specific examples of instructions to customers for setting up and using the accused product in a particular allegedly infringing way. *Apple Inc. v. AliveCor, Inc.*, No. 22-cv-07608-HSG, 2023 WL 4091287, at *1 (N.D. Cal. June 20, 2023) (citing Complaint, ¶¶ 105, 106, *Apple Inc. v. AliveCor, Inc.*, No. 22-cv-07608-HSG, ECF No. 1 (Dec. 2, 2022)). That case did not address the sufficiency of the complaint's allegations that defendant induced customers to use the accused product in the U.S. Here, in contrast, the only non-conclusory allegation is that YMTC has a website in English with specifications and identified applications. Opp. 14. But in actuality, Micron's pleading shows that YMTC's website simply contains marketing statements that the YMTC products (no different than any other NAND memory products) may be included in "consumer SSDs … enterprise servers, data centers, and other fields." Counterclaim Ex. 38 at 10. And marketing does not rise to the level of encouragement required for induced infringement. Mot. 15; *Masimo Corp. v. Sotera Wireless*, No. 19-CV-01100-BAS-NLS, 2020 WL 2306587, at *10 (S.D. Cal. May 8, 2020).

## V. Micron Does Not Plead Plausible Willful Infringement

Micron does not dispute that its willful infringement claims fall if its direct and indirect infringement claims fall. Opp. 16-17. Thus, its willful infringement claims should be dismissed.

## VI. Conclusion

As the Supreme Court explained in *Twombly*, there is a need to weed out, at the pleading stage, cases that do not plausibly state a claim, to avoid the "potentially enormous expense of discovery." 550 U.S. at 559. That need is just as acute here. Micron's counterclaims should be dismissed.

Respectfully submitted,

Date: April 2, 2024

By: */s/ Andrew T. Radsch*

Andrew T. Radsch
*Attorneys For Counterclaim Defendants Yangtze Memory Technologies Company, Ltd. and Yangtze Memory Technologies, Inc.*