James R. Batchelder (CSB # 136347)
Andrew T. Radsch (CSB # 303665)
James F. Mack (CSB # 322056)
Nancy N. Attalla (CSB # 341070)
**ROPES & GRAY LLP**
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303-2284
Telephone: (650) 617-4000
james.batchelder@ropesgray.com
andrew.radsch@ropesgray.com
james.mack@ropesgray.com
nancy.attalla@ropesgray.com

Additional counsel on signature page

*Attorneys for Plaintiff and Counterclaim Defendant*
***YANGTZE MEMORY TECHNOLOGIES COMPANY, LTD.***
*and Counterclaim Defendant*
***YANGTZE MEMORY TECHNOLOGIES, INC.***

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| YANGTZE MEMORY TECHNOLOGIES COMPANY, LTD., <br><br> Plaintiff, <br><br> v. <br><br> MICRON TECHNOLOGY, INC., and MICRON CONSUMER PRODUCTS GROUP, LLC, <br><br> Defendants. <br><br> MICRON TECHNOLOGY, INC., <br><br> Counterclaim Plaintiff, <br> v. <br><br> YANGTZE MEMORY TECHNOLOGIES COMPANY, LTD., and YANGTZE MEMORY TECHNOLOGIES, INC., <br><br> Counterclaim Defendants. | Case No. 3:23-cv-05792-RFL <br><br> **PLAINTIFF AND COUNTERCLAIM DEFENDANTS' RESPONSE TO DEFEDANTS' AND COUNTERCLAIM PLAINTIFF'S MOTION FOR PROTECTIVE ORDER** <br><br> Hearing Date: June 13, 2024 <br> Time: 9:00 a.m. <br> Place: Courtroom E, 15th floor <br> Magistrate Judge: Thomas S. Hixson |

**TABLE OF CONTENTS**

Page

I. ISSUES TO BE DECIDED ................................................................................................2

II. SUMMARY OF RELEVANT FACTS ............................................................................3

III. THE COURT SHOULD REJECT MICRON'S PROPOSALS AND ADOPT YANGTZE MEMORY'S ..................................................................................................4

    A. Micron Has Not Established That an Acquisition Bar Is Necessary, Let Alone One of the Breadth Micron Seeks..................................................................4

    B. Both Sides, Not Just Micron, Should Be Permitted to Make Their Source Code Documents Available at Their Company Headquarters ..............................7

    C. Micron's Modifications that Purport to Address U.S. Export Control Regulations Are Unnecessary, Unprecedented, and Go Far Beyond Those Regulations................9

    D. The "Technology at Issue" Here Is 3D NAND, Not 2D NAND ...............................14

IV. CONCLUSION...............................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. GNC Corp. v. LG Elecs., Inc.*,
   No. 3:17-cv-1090, 2017 U.S. Dist. LEXIS 176306 (S.D. Cal. Oct. 23, 2017)..........................6

*Apple, Inc. v. Wi-LAN, Inc.*,
   No. 3:14-cv-2235 (S.D. Cal Dec. 23, 2014), ECF No. 100 ......................................................6

*Catch a Wave Techs., Inc. v. Sirius XM Radio, Inc.*,
   No. C 12-05791, 2013 U.S. Dist. LEXIS 189086 (N.D. Cal. Aug. 6, 2013).............................5

*In re Deutsche Bank Trust Co. Ams.*,
   605 F.3d 1373 (Fed. Cir. 2010)........................................................................................1, 5, 10

*EPL Holdings, LLC v. Apple Inc.*,
   No. C-12-04306 JST (JSC), 2013 U.S. Dist. LEXIS 71301 (N.D. Cal. May 20,
   2013) ..................................................................................................................................1, 5, 10

*Google LLC v. Sonos, Inc.*,
   No. 20-cv-03845, 2021 U.S. Dist. LEXIS 80725 (N.D. Cal. Apr. 27, 2021)...........................5

*Huawei Techs. Co. v. Verizon Commc'ns, Inc.*,
   No. 2:20-cv-30 (E.D. Tex. June 18, 2020), ECF No. 41 ..............................................6, 10, 13

*Kelora Sys., LLC v. Target Corp.*,
   No. C 11-01548 CW (LB), 2011 WL 6000759 (N.D. Cal. Aug. 29, 2011) .............................1

*Nazomi Communications, Inc v. Arm Holdings PLC.*,
   No. C 02-02521-JF, 2002 WL 32831822 (N.D. Cal. Oct. 11, 2002)........................................5

*Rabin v. Google LLC*,
   No. 22-cv-04547-PCP, 2023 WL 8010231 (N.D. Cal. Nov. 20, 2023).................................10

*Textron Innovations Inc. v. SZ DJI Tech. Co.*,
   No. 6:21-cv-740 (W.D. Tex. May 5, 2022), ECF No. 76.............................................6, 10, 13

*Uniloc USA, Inc. v. Apple Inc.*,
   No. C 18-00360, 2018 U.S. Dist. LEXIS 110427 (N.D. Cal. July 2, 2018).............................6

*WiLAN, Inc. v. LG Elecs., Inc.*,
   No. 3:17-cv-358 (S.D. Cal Nov. 7, 2017), ECF No. 47............................................................6

Plaintiff and Counterclaim Defendant Yangtze Memory Technologies Company, Ltd. ("YMTC"), and Counterclaim Defendant Yangtze Memory Technologies, Inc. ("YMTI") (collectively, "Yangtze Memory"), respectfully submit this response to Micron's Motion for a Protective Order (ECF No. 55) and ask the Court to reject Micron's proposed provisions and adopt Yangtze Memory's. Yangtze Memory's proposed protective order is attached as Exhibit 1 ("Yangtze Protective Order") to the Declaration of Allen Cross ("Cross Decl."), filed concurrently herewith. Pursuant to the Court's Standing Order, Lang Decl. Ex. 2 (ECF No. 56-2, hereinafter "Parties' Redline Proposed Order") is a redlined comparison of the parties' proposals to the District's Model Order, showing the agreed modifications in redline (unhighlighted), and presenting the parties' competing proposals for the disputed provisions in light blue (Micron) and light orange (YMTC), respectively.

Micron seeks unprecedented and unwarranted departures from the Court's Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets ("Model Order," *available at* https://www.cand.uscourts.gov/forms/model-protective-orders/). But this "court treats the model protective order as setting forth presumptively reasonable conditions regarding the treatment of highly confidential information." *Kelora Sys., LLC v. Target Corp.*, No. C 11-01548 CW (LB), 2011 WL 6000759, at *2 (N.D. Cal. Aug. 29, 2011); *see also EPL Holdings, LLC v. Apple Inc.*, No. C-12-04306 JST (JSC), 2013 U.S. Dist. LEXIS 71301, at *2-3 (N.D. Cal. May 20, 2013). As such, it is the party that seeks to add restrictions beyond the Model Order that must bear the burden to show that the proposed modifications are reasonable whereas the protections afforded by the Model Order are not. *Cf. In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1381 (Fed. Cir. 2010). Micron has not satisfied that burden because it cannot.

Most notably, Micron proposes significant departures from the Model Order purportedly to address Export Administration Regulations ("EAR") and YMTC's (but not YMTI's) designation on the Department of Commerce's Entity List. Micron's proposals are not necessary, go far beyond what EAR prohibits or restricts, and appear to be without any precedent. Micron has not cited a single case where the types of restrictions it seeks to impose were adopted. In contrast, as discussed further below, there have been multiple patent infringement litigations that have involved Entity List-designated

companies, and in none of those cases has a court adopted provisions anywhere close to what Micron seeks. Rather, in each of them, the protective orders simply state that the parties shall comply with all export control regulations—which is precisely what Yangtze Memory proposes here, and what the N.D. Cal. Model Order provides. Yangtze Memory has searched for and found no case in which a court adopted the types of restrictions that Micron seeks here—likely because additional restrictions are unnecessary. The EAR defines what conduct is prohibited and the parties, counsel, retained experts, and everyone else, are required to follow those regulations—none of which prohibit Micron from providing discovery in litigation to Ropes & Gray. Yet Micron's proposals go far beyond those regulations. Micron's attempt to weaponize EAR here should be rejected.

## I.  ISSUES TO BE DECIDED

1) Where the Model Order does not contemplate a patent acquisition bar at all, whether Micron has met its burden of showing that a patent acquisition bar lasting two years—instead of one year—after the suit's termination is needed here.

2) Where Micron asserts that it is proper and necessary for Micron to make it "source code" information available for inspection only at its corporate headquarters outside of this District, whether YMTC should be permitted to do the same for its "source code" information (especially where Chinese export control laws prohibit the removal of that information from China without governmental authorization).

3) Whether Micron has met its burden of showing good cause for modifying the Model Order to impose restrictions allegedly to address EAR concerns, where those restrictions are unnecessary, unprecedented, and go beyond what EAR itself restricts—and where the Model Order provisions are presumptively adequate to address export control issues.

4) Where the asserted patents are directed to 3D NAND technology and the accused products are 3D NAND, whether the definition of "Technology at Issue" should be broadened to include all 2D NAND technology that does not overlap with 3D NAND technology.

2

## II. SUMMARY OF RELEVANT FACTS

Yangtze Memory provided a draft proposed protective order, based on and closely tied to the Model Order, to Micron on February 13, 2024. *See* Cross Decl. Ex. 2.

On March 8, over three weeks later, Micron responded with extensive revisions, many of which had nothing to do with EAR, and others of which sought to hinder Yangtze Memory's preparation of its case. *See* Lang Decl. Ex. 4 (ECF No. 56-4). The proposed changes found in Micron's draft included many provisions to restrict access to Micron information, limit the activities of YMTC's counsel, and require onerous disclosures by YMTC experts. *See* Cross Decl. Ex. 3 (Micron Mar. 8, 2024 Draft Order §§ 1, 7). The proposed changes also included defining the technology at issue in the case to include all NAND memory technology (*id*. § 2.24), a patent prosecution and acquisition bar (*id*. § 8), restrictions on access to source code (*id*. § 9), and added provisions that would require any party to "discontinue" performing any activity that was merely alleged to violate the protective order pending resolution by the Court (*id*. § 14).

On March 26, Yangtze Memory provided additional revisions to the draft order. Yangtze counsel states that the revisions "reverted most changes to the model PO for N.D. Cal.," and to "address[] your concerns about EAR issues, we have added that disclosures permitted under the PO may be made only subject to other law or regulation." Lang Decl. Ex. 5 (ECF 56-5); Cross Decl. Ex. 4 (Yangtze Mar. 26, 2024 Draft Order). The substance of the changes included reverting many of the restrictions and disclosure requirements placed on YMTC and its agents (*see id*. §§ 1, 7), restricting the scope of the technology at issue to "3D NAND" (*see id* § 2.24), removing the prosecution and acquisition bars (*id*. § 8), modifying certain terms related to access to source code (*id*. § 9), and removing terms that would require a party to "discontinue" activities alleged to violate the order pending resolution by the court (*id*. § 14).

Over the following weeks the parties met and conferred extensively. Micron ultimately walked back many of its more onerous proposals—for example, ones that would prohibit Ropes & Gray lawyers working on this case from advising any client, including YMTC, on patent licensing regarding NAND semiconductor technology, effectively seeking to prevent Ropes & Gray from advising

3

Yangtze Memory about any potential settlement here or the licensing of its patents to anyone. Cross Decl. Ex. 3, §§ 2.23, 8. But certain disputes remained.

On April 3, 2024, Micron stated that the parties were at "an impasse on the protective order in connection with three primary issues: (1) EAR-related restrictions, (2) a prosecution bar, (3) source code provisions." Cross Decl. Ex. 5 (Apr. 3, 2024 Lang email to Radsch).

On April 4, 2024, the parties met and conferred about the protective order by phone. Lang Decl. ¶ 6 (ECF 56). On May 6, 2024, following the meet and confer, Yangtze Memory provided a draft order to Micron that included each party's proposed terms, as well as a comparison against the Model Order. The parties agreed to a prosecution and acquisition bar of the type that Micron had originally proposed, but disagreed whether it should extend to one year or two years from the final termination of the action. *See* Cross Decl. Ex. 6 ("May 6, 2024 Joint Draft" § 8). However, the parties still disputed the language in § 1 to limit YMTC and its agents from attending any hearings or communicating about "the substance of any infringement claim," the definition of the technology at issue (*id.* § 2), the restrictions on access to confidential materials by YMTC House Counsel, party experts, and authors or custodians (*id.* §§ 7.2-7.3), the disclosure requirements for experts (*id.* §7.4), the specifics where source code must be made available (*id.* § 9(d)), and whether a party must "discontinue" activities alleged to violate the order pending resolution by the court (*id.* § 14).

On May 7, 2024, Micron filed its present motion for the Court to issue a protective order.

**III.   THE COURT SHOULD REJECT MICRON'S PROPOSALS AND ADOPT YANGTZE MEMORY'S**

    **A.   Micron Has Not Established That an Acquisition Bar Is Necessary, Let Alone One of the Breadth Micron Seeks**

Yangtze Memory does not believe that an acquisition bar is necessary, nor does the Model Order include or contemplate one. In an effort to reduce the number of disputes, however, Yangtze Memory agreed to Micron's demand for a patent acquisition bar, but only if the scope were narrowly and appropriately tailored in time (lasting one year, not two, after the suit ends) and subject matter (3D NAND, not just any NAND technology). But Micron would not compromise.

Micron advocates departing from the Model Order by seeking the imposition of an acquisition bar, so it is Micron's burden to show "that the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information." *In re Deutsche*, 605 F.3d at 1381 (remanding lower court's discovery order to consider additional evidence in reevaluating the adoption of a protective order); *see also EPL Holdings*, 2013 U.S. Dist. LEXIS 71301 at *13-14 (narrowing the acquisition bar "to the subject matter of [] litigation"). Micron has failed to meet this burden, or even address it.

Micron does not explain why an acquisition bar is necessary here. Despite recognizing that there is a dispute as to "what protections are warranted when an Entity Listed entity … has brought an action for patent infringement" (Mot. 2), Micron presents no facts here that support a patent acquisition bar. Acquiring a patent is not an act that falls within the purview of EAR. Instead, Micron cites two cases that purportedly "support[]" a two-year bar without explaining whether the considerations that applied there, also apply here. *See* Mot. 6 (citing *Google LLC v. Sonos, Inc.*, No. 20-cv-03845, 2021 U.S. Dist. LEXIS 80725, at *4-7 (N.D. Cal. Apr. 27, 2021); *Catch a Wave Techs., Inc. v. Sirius XM Radio, Inc.*, No. C 12-05791, 2013 U.S. Dist. LEXIS 189086, at *1-3 (N.D. Cal. Aug. 6, 2013)). They do not.

Adoption of an acquisition bar is not universal. Instead, as demonstrated by the Model Order (which does not include an acquisition bar, even as an optional provision), a bar precluding counsel and others that have received confidential technical information from providing advice on the acquisition of patent rights (*e.g.*, through licensing, mergers, acquisitions, indemnification, etc.) is abnormal. Model Order at §8. Indeed, in *Nazomi Communications, Inc v. Arm Holdings PLC*, this Court rejected the inclusion of an acquisition bar because defendant had not established that the "risk of inadvertent disclosure from attorney to client is so great that an access bar must be imposed." No. C 02-02521-JF, 2002 WL 32831822, at *3 (N.D. Cal. Oct. 11, 2002). And any suggestion that an acquisition bar is necessary because YMTC is a listed entity falls flat since patent rights are not subject to EAR restrictions. Indeed, in two other patent infringement litigations involving parties on the Entity

5

List, one a defendant (SZ DJI Technology Co., Ltd.) and one a plaintiff (Huawei Technologies Co., Ltd.), the protective orders adopted there did not include an acquisition bar. *See* Protective Order at 9, *Textron Innovations Inc. v. SZ DJI Tech. Co.*, No. 6:21-cv-740 (W.D. Tex. May 5, 2022), ECF No. 76 (hereinafter "Textron Protective Order"); Protective Order at 19-20, *Huawei Techs. Co. v. Verizon Commc'ns, Inc.*, No. 2:20-cv-30 (E.D. Tex. June 18, 2020), ECF No. 41 (hereinafter "Huawei Protective Order").

Micron's proposed acquisition bar should be rejected because it is overbroad in scope and time. Regarding scope, Micron's proposal encompasses information not relevant to the subject of the dispute—*e.g.*, semiconductor technology related solely to 2D NAND. *Am. GNC Corp. v. LG Elecs., Inc.*, No. 3:17-cv-1090, 2017 U.S. Dist. LEXIS 176306, at *11 (S.D. Cal. Oct. 23, 2017) (rejecting proposed patent acquisition bar when bar encompassed information not relevant to the subject of the dispute). As discussed below in Section III.D, technology used in 2D NAND but ***not*** used in 3D NAND, is beyond the scope of this case, and there is no justifiable basis to extend an acquisition bar to cover information relevant only to 2D NAND but not 3D NAND—which is the subject matter of this suit.

Micron's suggestion that the case law supports a two-year bar is equally defective absent any explanation why that duration is necessary here. Indeed, this court has applied a one-year patent prosecution bar and patent acquisition bar in cases involving highly confidential source code. *Uniloc USA, Inc. v. Apple Inc.*, No. C 18-00360, 2018 U.S. Dist. LEXIS 110427, at *4-10 (N.D. Cal. July 2, 2018). And sister courts have adopted bars involving material that "may be subject to the US government export control and economic sanctions laws, including the Export Administration Regulations" that terminate as soon as "the individual person(s) cease to have access to the [designated] material." *See* Suppl. Protective Order ¶¶ 24, 39, *Apple, Inc. v. Wi-LAN, Inc.*, No. 3:14-cv-2235, (S.D. Cal Dec. 23, 2014), ECF No. 100; Suppl. Protective Order ¶¶ 24, 39, *WiLAN, Inc. v. LG Elecs., Inc.*, No. 3:17-cv-358, (S.D. Cal Nov. 7, 2017), ECF No. 47.

Micron's argument that its requested two-year bar is consistent with the Model Order is incorrect because the Model Order does not have an acquisition bar. And the duration of the

6

prosecution bar in the Model Order (Mot. 6) is irrelevant to the necessity and duration of an acquisition bar. Unlike prosecution bars, which pertain to patent claims that can be newly drafted and amended to cover a company's existing products, acquisition bars would cover patents with established claims. And to the extent acquisition activities encompassed patent applications still in prosecution, then the patent prosecution bar would become effective as to those pending claims to bar advising about those pending claims.

### B. Both Sides, Not Just Micron, Should Be Permitted to Make Their Source Code Documents Available at Their Company Headquarters

There are two independent reasons why Yangtze Memory should be permitted to make its source code documents available for inspection at its headquarters in Wuhan, China.

***First***, Micron acknowledges that it is appropriate, and sometimes necessary, for a litigant to make its source code available for inspection where that information resides—which in the case of YMTC, is at its corporate headquarters in Wuhan, China. In this case, Micron requires production of its source code only at its corporate headquarters in Boise, ID. According to Micron, its source code requires a "Cadence environment," which Micron "has never made … available on a stand-alone computer" outside its own offices. Cross Decl. Ex. 7 (Apr. 4, 2024 Lang email to Radsch). The source code that Micron asserts it can make available only at its headquarters, is the same type of source code that Micron demands YMTC produce outside its headquarters. Like Micron, YMTC is seeking to make its source code available at its corporate office where that code resides; that code does not reside in the United States. While Wuhan may be farther from this District than Boise, travel outside this District for source code review would be required in both cases.

Micron's argument for unequal treatment of the parties' source code misses the mark. Micron asserts that YMTC should have to relocate its source code to the United States because YMTC filed suit here. Mot. at 7. But YMTC's source code is not relevant to ***YMTC's*** claims for infringement; that source code would be relevant only to ***Micron's*** patent infringement counterclaims. It is Micron, not YMTC, who decided to file those claims in this District. Further, Micron's invocation of Section

9(c) of the Model Order (*see* Mot. at 7) is incongruous with its position that it will make Micron's code available only at Micron's headquarters, not at its counsel's offices.

***Second***, practically speaking, YMTC cannot produce its source code for inspection in the United States due to Chinese export control and related laws that prohibit taking that information out of China without governmental authorization and license. *See* Decl. of Menghao Dai in Supp. of Yangtze Memory's Resp. (submitted concurrently herewith) at ¶¶ 9-18. Conversely, making YMTC's source code computer available for inspection at YMTC's headquarters would enable Micron's experts and counsel to review that information sooner than having to wait while YMTC (or Micron) seeks necessary approvals to take that information out of China, which approvals may not be forthcoming or rapid.

As detailed in the attached Declaration of Menghao Dai, a partner at the law firm King & Wood Mallesons in China, YMTC's confidential source code information is subject to the Export Control Law of the People's Republic of China and the Foreign Trade Law of the People's Republic of China (2022 Amendment) and cannot be transported out of China without first seeking and obtaining an appropriate license. *See id.* ¶¶ 9-11, Ex. 5, Ex. 6. YMTC's detailed confidential technical information also is likely subject to China's Data Security Law and the CBDT Security Assessment Measures, which again would require YMTC to first seek and obtain governmental approval before that information may be moved out of China. *See id.* ¶¶ 14-15, Exs. 1-4. Finally, that information also likely is subject to the Law of the People's Republic of China on Guarding State Secrets (2024 Revision), which also would require YMTC to obtain governmental authorization before moving that information out of China. *See id.* ¶ 13, Ex. 7.

Taking YMTC's source code information out of China without the required authorizations could result in severe administrative or criminal penalties for YMTC, and possibly Micron, as well. *See id.* ¶¶ 12, 17-18. As a result, even if the Court were to adopt Micron's proposal whereby YMTC's source code information must be made available in the United States, YMTC anticipates that it would need to seek further relief from this Court while it seeks to obtain approval from authorities in China to transport that information to the United States. *See id.* ¶ 16. Given Micron's own sensitivities to

8

export control regulations applicable to its own source code information, it should come as no surprise to Micron that YMTC's source code information may not leave China without necessary licensure. Accordingly, to address these considerations, too, it is more practical and efficient, and indeed necessary, for YMTC to make its source code information available for inspection at its corporate headquarters—just like Micron is doing.

### C. Micron's Modifications that Purport to Address U.S. Export Control Regulations Are Unnecessary, Unprecedented, and Go Far Beyond Those Regulations

Micron's modifications to the Model Order to "ensure compliance with EAR," ECF 55 at 8, are unnecessary and unprecedented; exceed the EAR, which supposedly animate Micron's proposals; and, as suggested by Micron's Motion, reflect an unwarranted and unsubstantiated concern that Ropes & Gray lawyers may not comply with EAR or otherwise fulfill their duties as officers of the Court. Micron's modifications should be rejected.

***Micron's proposed provisions are unnecessary:***  First, Micron's modifications to the Model Order to "ensure compliance with EAR" are unnecessary because the parties and their counsel already are required to comply with EAR by operation of law, and it is not the purpose of a confidentiality protective order to ensure compliance with independently binding law.  To be sure, nothing in either party's proposed protective order provisions would allow a party or its counsel to ignore other governing law or regulation, including EAR.  Put another way, a protective order and export control regulations operate independently and complementary.  What a protective order may permit does not trump what other law forbids.  And to be sure there is no ambiguity about that, YMTC's proposals include an express statement that any disclosure of designated materials must, of course, be in compliance with all export control regulations.  Yangtze Protective Order §§ 7.2, 7.3, 9(j), 14.3.

Second, the District's Model Order already includes an optional "Export Control" provision that subjects the "[d]isclosure of Protected Materials … to all applicable laws and regulations relating to the export of technical data contained in such Protected Material, including the release of such technical data to foreign persons or nationals in the United States or elsewhere." Model Order § 14.3.

9

RESPONSE TO MOTION FOR PROTECTIVE ORDER                          CASE NO. 3:23-CV-05792-RFL

Yangtze Memory's proposal includes this language and similar language throughout its proposed protective order. *See* Yangtze Protective Order §§ 7.2, 7.3, 9(j), 14.3. Micron's proposal also includes that Model Order language. *See* Parties' Redline Proposed Order § 14.3. But Micron fails to explain why that language from this District's Model Order, which is presumptively reasonable and sufficient, is insufficient here. Put another way, Micron has not met its burden of showing that its changes to the Model Order are appropriate. *See Rabin v. Google LLC*, No. 22-cv-04547-PCP, 2023 WL 8010231, at *1 (N.D. Cal. Nov. 20, 2023) ("[B]ecause [Defendant] seeks to impose greater restrictions, it bears the burden of showing prejudice or harm that will result if the less restrictive standard order, as modified by Plaintiffs, is imposed."); *see also EPL Holdings*, 2013 U.S. Dist. LEXIS 71301, at *2-3; *In re Deutsche Bank*, 605 F.3d at 1381.

***Micron's proposed provisions are unprecedented:*** Citing no case in support, Micron moves the Court to impose restrictive provisions that exceed the obligations of EAR. Yangtze Memory, on the other hand, proposes adopting the Model Order's language with slight modifications requested by Micron, all of which is consistent with the protective orders that other courts have adopted in cases involving parties listed on the Entity List. *See, e.g.*, Textron Protective Order ¶¶ 11, 14; Huawei Protective Order ¶¶ 7, 9, 12, 14. In none of those cases involving Entity Listed-companies did the court adopt the types of restrictions that Micron seeks here, and Micron cannot establish that the circumstances there are in any relevant way different from the circumstances here, or that those protective orders were inadequate and failed to ensure EAR compliance. Yangtze Memory is aware of no patent infringement suit in which a court adopted the restrictions that Micron proposes here. It appears that Micron is not either.

***Micron's proposals exceed EAR, are ambiguous, and are improper:*** In addition to Micron's proposals being unnecessary and without precedent, they are also not tethered to what EAR prohibits, but seek to go beyond EAR to impose unwarranted and unreasonable burdens on counsel for YMTC. In many cases, too, Micron's proposals are too ambiguous.

To be certain, nothing in EAR prohibits disclosure of Micron's confidential technical information to Ropes & Gray as outside counsel for YMTC. Micron effectively concedes as much, in

that it has already produced to Ropes & Gray some information that Micron has contended is subject to EAR; and is proposing protective order provisions that will govern Micron's continued disclosure to Ropes & Gray. Further, the Bureau of Industry and Security, which maintains the Entity List, has been clear that the license requirements and policies of the Entity List apply ***only*** to the specifically named entity—and does not extend to any related companies, affiliates, or even wholly owned subsidiaries.[1] Ropes & Gray is not a listed entity.

Micron's additions to **Section 1** go beyond EAR and are ambiguous. The separate provisions of the proposed protective order governing the disclosure of Attorneys Eyes Only or Source Code information, which the parties have already agree to, prohibit dissemination of such information to a party (*e.g.*, YMTC) or employees of a party, so the additions of Section 1 are also not needed.

- First, Micron states that its confidential technical information may not be disclosed to any person "associated with YMTC except" for Ropes & Gray and retained experts. But "associated with" is unworkably ambiguous. By its terms, this prohibition would preclude such information from being shared with deposition vendors that YMTC retains for depositions of Micron engineers, meaning that Micron's technical documents could not be used at depositions of Micron's own witnesses; or shared with a document management vendor retained for purposes of litigation; or other litigation support personnel who may permissibly view that information under the confidentiality restrictions of the protective order (*see, e.g.*, Parties' Redline Proposed Order at §§7.2, 7.3), but for Micron's proposals for Section 1.

- Second, Micron proposes that no YMTC personnel or "agents" may attend any portion of any hearing in which Micron confidential technical information will be discussed.

---

[1] *See* BIS Website – Entity List FAQs, *available at* https://www.bis.doc.gov/index.php/component/fsj_faqs/cat/33-entity-list-faqs%23:~:text=The%2520Entity%2520List%2520includes%2520restrictions,entries%2520on%2520the%2520Entity%2520List.#faq_134 (last visited May 21, 2024) ("Subsidiaries, parent companies, and sister companies are legally distinct from listed entities. Therefore, the licensing and other obligations imposed on a listed entity by virtue of its being listed do not per se apply to its subsidiaries, parent companies, sister companies, or other legally distinct affiliates that are not listed on the Entity List.").

Micron does not and cannot justify excluding YMTC personnel from attending those portions of a hearing that do not discuss Micron confidential technical information. Indeed, excluding YMTC personnel from the public portion of a hearing would appear to be without precedent. And Micron's concerns can be addressed in the same manner courts typically address situations where a party's confidential technical information is discussed at a hearing: by sealing the courtroom during such discussion and excluding those persons—such as company representatives—who are not permitted access to such confidential information.

- Third, Micron's proposals attempt to police YMTC's counsel's communications with its client that are fundamental to the client-lawyer relationship, depart drastically from EAR, and again appear to be without precedent. Out of "concern that Ropes . . . will communicate with YMTC about whether it has a viable (or poor) case," Mot. 9, a communication central to the client-lawyer relationship, Micron asks the Court to bar "Ropes from indicating to YMTC that [Ropes] views the infringement case against Micron on a particular claim to be strong or weak." This is meritless. Under the EAR, "technology" is defined as: "Information necessary for the 'development,' 'production,' 'use,' operation, installation, maintenance, repair, overhaul, or refurbishing . . . of an item." 15 C.F.R. § 772.1 (2023). A statement that a claim is "strong" or "weak" does not, on its own, provide any of that information. A claim could be strong or weak for many reasons—such as an inability or ability to secure necessary evidence; lack or presence of U.S. sales or other conduct that would infringe; a hard or easy to understand theory; or any other multitude of reasons that do not provide specifics into how Micron's accused products are made. Micron also does not explain why an assertion that a claim is "strong" or "weak" provides any more information about Micron's confidential technical information (it doesn't) than simply saying Micron does or does not infringe a claim, which Micron's proposals confusingly would permit. Micron's proposal may also contravene an attorney's ethical

obligations, and would be improper for that reason, too. *See, e.g.*, Model Rules of Pro. Conduct r. 2.1 ("In representing a client, a lawyer shall exercise independent professional judgment and render candid advice."). It is certainly possible, and permissible under EAR, to describe an infringement claim as strong or weak without providing confidential technical information about Micron's accused products.

Micron's additions to **Section 7** similarly go beyond the EAR, and are both unnecessary and inappropriate. As before, the EAR itself as well as the separate provisions of the proposed protective order governing the disclosure of confidential information, which the parties have already agreed to, prohibit inappropriate disclosures to a party (*e.g.*, YMTC) or employees of a party, and the additional restrictions that Micron has proposed throughout Section 7 are not needed. Similarly, there is no good cause for the onerous requirements placed on experts proposed in § 7.4.

Micron's additions to **Section 14** are also inappropriate. Specifically, Micron's proposal for § 14.6 would require a party merely accused of violating the protective order to "discontinue the performance of and/or shall not undertake the further performance of any action alleged to constitute a violation" pending a motion for relief by the Court. This provision assumes that a party is guilty until proven innocent and could incentivize Micron to raise a multitude of questionable challenges. The parties have already agreed to a wide range of protections and have agreed that disputes may be resolved by the Court. Micron has failed to show good cause for applying additional restrictions while the Court adjudicates any disputes, which additional restrictions are not found in the Model Order.

Finally, Micron's extensive modifications proposed to the Model Order's requirements for the disclosure of a party's experts are unduly burdensome and lack any rational justification. Micron identifies no precedent for expanding the Model Order's disclosure requirements.

For example, Micron's proposed increase of the reporting period from five years to ten years is baseless and untethered to EAR, which again Micron asserts animates Micron's requested changes. As Micron recognizes, YMTC was not formed until 2016—eight years ago. Moreover, in *Textron* and *Huawei*, which involved parties on the Entity List, the various reporting periods were between four and six years. Textron Protective Order ¶ 5(e); Huawei Protective Order ¶ 6(d).

Similarly, Micron does not adequately explain how the additional disclosures it seeks, which are not found in the Model Order, would ensure that YMTC's proposed experts will not "disclose[] to YMTC or anyone acting on its behalf" Micron's technical information. YMTC's experts already would be bound by both the separate protective order limitation on who confidential information may be disclosed to, and the EAR (as well as all other relevant or applicable U.S. law). In effect, Micron is arguing that YMTC's experts cannot be trusted to comply with those obligations—an argument that is both meritless, and that fails to explain why Micron's additional proposals would somehow ensure compliance where their absence would not. Nowhere does Micron explain why the independent obligations of EAR are not themselves enough to ensure compliance with EAR. The Model Order's disclosure requirements, including required disclosures about the expert's past cases, current employer, and identities of "each person or entity from whom the expert has received compensation … in his or her areas of expertise or to whom the expert has provided professional services" over the last five years (Model Order § 7.4(a)(2)), is sufficient assess whether "they are [] operating on behalf of YMTC" (Mot. 11).

### D. The "Technology at Issue" Here Is 3D NAND, Not 2D NAND

The technology in this case is 3D NAND memory. Yangtze Memory's definition for Technology at Issue is "semiconductor technology used in 3D NAND memory or 3D NAND memory devices" (Yangtze Protective Order § 2.24), which captures the full scope of the technology in this case. Micron, however, attempts to impose a far heavier burden on experts (Parties' Redline Proposed Order §§ 7.4(a), 7.4(d)) and expand the scope of its proposed prosecution and acquisition bars (Parties' Redline Proposed Order § 8) by sweeping in unrelated 2D NAND technology in the definition of Technology at Issue.[2]

As Micron recognized, YMTC accuses six of Micron's 3D NAND memory products, and "YMTC seeks from Micron disclosure of … the development, design, layout, and production of Micron's advanced 3D NAND memory." Mot. 2, 5. Similarly, Micron asserts five patents against

---

[2] This term, as used in § 9(e) of the Parties' Redline Proposed Order, does not materially affect the scope of the software and licenses necessary to review discoverable source code.

14

RESPONSE TO MOTION FOR PROTECTIVE ORDER    CASE NO. 3:23-CV-05792-RFL

YMTC's 3D NAND memory products. Compl. at 19-28, ECF No. 35. And, as Micron alleges, YMTC is a global manufacturer and supplier of 3D NAND memory products and has developed 3D NAND not 2D NAND) storage devices since its founding in 2016. ECF No. 35 at 14-15. Yet Micron argues that "Technology at Issue" should be defined as "related to or capable of use in NAND memory or NAND memory devices," irrespective of whether it relates to 3D NAND.

That some techniques and structural components may be applicable to NAND memory in general (Mot. 12-13), does not mean that all semiconductor technology related to or capable of use in 2D NAND is at issue in this case. And contrary to Micron's "backbone" argument, the evolutionary process of technology does not put all the elementary building blocks that led to 3D NAND at issue in this case. It is unclear what Micron's concern is. Micron's examples of patented techniques and structures that are "**applicable to** both 2D and **3D NAND**" (Mot. 12-13 (emphasis added)) unquestionably fall within Yangtze Memory's proposed definition. That these techniques and structures are applicable to 3D NAND *and* technologies other than 3D NAND memory does not remove them from Yangtze Memory's definition. Rather, what is excluded by Yangtze Memory's definition but included by Micron's are technologies relevant *only* to 2D NAND that are not also relevant to 3D NAND. And Micron has no explanation as to how technologies not relevant to 3D NAND comprise "Technology at Issue" for a suit squarely about 3D NAND. There is no justification for imposing further restrictions on any prosecution or acquisition bar that may be adopted or for requiring expanded disclosure of expert's history in unrelated fields that pertain to 2D NAND and not 3D NAND.

## IV.   CONCLUSION

Yangtze Memory's proposed protective order should be adopted.

Date: May 21, 2024

Respectfully submitted,

By: */s/ Andrew T. Radsch*
James R. Batchelder (CSB # 136347)
Andrew T. Radsch (CSB # 303665)
James F. Mack (CSB # 322056)
Nancy N. Attalla (CSB # 341070)
**ROPES & GRAY LLP**

        1900 University Avenue, 6th Floor
        East Palo Alto, CA 94303-2284
        Telephone: (650) 617-4000
        james.batchelder@ropesgray.com
        andrew.radsch@ropesgray.com
        james.mack@ropesgray.com
        nancy.attalla@ropesgray.com

        Rachael Bacha (NYB # 4817938)
        1211 Avenue of the America
        New York, NY 10036
        Telephone: (212) 596-9062
        rachael.bacha@ropesgray.com

        Allen S. Cross (DCB# 252687)
        Nicole S. L. Pobre (DCB # 1735421)
        2099 Pennsylvania Avenue,
        N.W. Washington, D.C. 20006
        Telephone: (202) 508-4600
        nicole.pobre@ropesgray.com

        *Attorneys for Plaintiff and Counterclaim Defendant YANGTZE MEMORY TECHNOLOGIES COMPANY, LTD. and Counterclaim Defendant YANGTZE MEMORY TECHNOLOGIES, INC.*