# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| YANGTZE MEMORY TECHNOLOGIES COMPANY, LTD., <br><br> Plaintiff, <br><br> v. <br><br> MICRON TECHNOLOGY, INC., and MICRON CONSUMER PRODUCTS GROUP, LLC, <br><br> Defendants. <br><br> MICRON TECHNOLOGY, INC., <br><br> Counterclaim Plaintiff, <br><br> v. <br><br> YANGTZE MEMORY TECHNOLOGIES COMPANY, LTD and YANGTZE MEMORY TECHNOLOGIES, INC., <br><br> Counterclaim Defendants. | Case No. 3:23-cv-05792-RFL <br><br> **DECLARATION OF MENGHAO DAI IN SUPPORT OF YANGTZE MEMORY'S RESPONSE TO MICRON'S MOTION FOR PROTECTIVE ORDER** |

I, Menghao Dai, declare and state as follows:

1. I am a lawyer and Partner at King & Wood Mallesons, based in Shanghai and Beijing, People's Republic of China, and I have personal knowledge regarding the facts stated herein.

2. I have been retained by Yangtze Memory Technologies Company, Ltd. ("YMTC") to assist in matters concerning the production of YMTC's source code and confidential technical information in its patent dispute against Micron Technology, Inc., and Micron Consumer Products Group, LLC (collectively "Micron") in the Northern District of California (the "Matter"). I have been asked to advise YMTC on whether such production might be subject to Chinese export control laws and regulations, or other related laws and regulations.

3. I am a licensed PRC lawyer and PRC patent agent. My expertise is specifically in export control and sanctions, customs and trade compliance, and other related areas.

4. Attached as Exhibit 1 is a true and correct translation of "Data Security Law" ("DSL").

5. Attached as Exhibit 2 is a true and correct translation of "Cross-border Data Transfer Security Assessment Measures" ("CBDT").

6. Attached as Exhibit 3 is a true and correct translation of "Administrative Measures for Data Security in the Field of Industry and Information Technology for Trial Implementation" ("IIT DSM").

7. Attached as Exhibit 4 is a true and correct translation of "Regulations for the Administration of Network Data Security (Exposure Draft)" ("NDSR").

8. I understand that YMTC has been accused of infringing certain patents owned by Micron Technologies, Inc. I further understand that Micron has identified the accused products as YMTC's 64-layer, 128-layer, and 232-layer 3D NAND chips.

9. I understand that YMTC has confidential technical documents and information that may be relevant to this Matter because they describe details about the manufacture, production, and/or operation of YMTC's accused products, such as process flows, process recipes, mask layout information, and other similar technical documents (hereinafter, "core technical documents"). I understand that these documents may qualify as "source code" under the protective order being negotiated between YMTC and Micron. I have personally reviewed many of these documents with YMTC to ensure that I understood their nature and content.

10. It is likely if not certain that many of YMTC's core technical documents cannot be exported out of China without license and/or other authorization for relevant Chinese authorities.

11. The Foreign Trade Law of the People's Republic of China (2022 Amendment) and the Export Control Law of the People's Republic of China ("ECL"), restrict certain information from being exported from China without a license. Attached as Exhibit 5 is a true copy of "Foreign Trade Law of the People's Republic of China (2022 Amendment)." Attached as Exhibit 6 is a true copy of an English translation of PRC Export Control Law. The unauthorized export of YMTC's core technical documents likely would be prohibited by PRC Foreign Trade Law Article 15 and PRC Export Control

Law Articles 1, 2, 12. Export of such materials from China would require license or other approval from the Ministry of Commerce, People's Republic of China.

12. Failing to obtain such license/approval before export out of China of materials subject to those regulation, may lead to administrative and/or criminal liability for YMTC (*see* Ex. 6, Articles 34 and 43) and also potential adverse impact to Micron (*see* Ex. 6, Article 44).

13. In addition, YMTC core technical documents may be subject to The Law of the People's Republic of China on Guarding State Secrets (2024 Revision), Articles 5 and 28. Attached as Exhibit 7 is a true copy of an English translation of "Law of the People's Republic of China on Guarding State Secrets (2024 Revision)". YMTC may have to negotiate with the Ministry of Science and Technology of China and other relevant authorities to identify the scope of secrecy that applies to its material and specific requirements for the treatment certain classified matters, prior to being able to export them.

14. Finally, YMTC's core technical documents may be catalogued as important data under the Data Security Law (*see* Ex. 1), the Cross-border Data Transfer Security Assessment Measures (*see* Ex. 2), the Administrative Measures for Data Security in the Field of Industry and Information Technology for Trial Implementation (*see* Ex. 3), and the Regulations for the Administration of Network Data Security (Exposure Draft) (*see* Ex. 4). These laws regulate the cross-border transfer of important data, which must go through the security assessment process, which means such transfer must obtain ax-ante approval from Cyberspace Administration of China ("CAC").

15. The Cross-border Data Transfer Security Assessment Measures defines important data as data that the tampering, sabotage, leakage or illegal acquisition or use of which, once it occurs, may endanger national security or public interests. Under the Regulations for the Administration of Network Data Security (Exposure Draft), design schemes, production processes, and other related data, as well as data on scientific and technological achievements in fields that have a direct impact on national security and economic competitiveness, should be important data. *See* Ex. 4, Article 73. The nature of YMTC's technical documents may make such data "important data" that the owner of which has a responsibility to identify and treat sensitive data as important data following existing guidance.

*See* Ex. 3, Article 7. As such, when a company recognizes that certain data categories could be deemed important data due to their potential impact, it is incumbent upon the company to afford such data with corresponding scrutiny and protection. Also, any provision of data, that is currently stored in China, to a foreign court pursuant to an order from a foreign court, requires an ex-ante approval from competent authorities. *See* Ex. 1, Article 36.

16. Obtaining approval and a license is uncertain and time consuming. Under the above laws, the approvals involve collaboration among several regulatory authorities, including, without limitation, the CAC, the Ministry of Justice, and possibly the Ministry of Science and Technology. Given the cross-ministry collaboration, the approval process may take an extended period of time, if an approval is possible.

17. Failing to obtain the necessary license/approval before exporting technical material out of China may incur administrative penalty and/or criminal liability for YMTC under PRC Export Control Law (Ex. 6, Articles 34 and 43) and Data Security Law (Ex. 1, Articles 46 and 48).

18. Similarly, failing to obtain such license/approval before exporting technical material out of China may also adversely impact the other party involved, Micron, under PRC Export Control Law (Ex. 6, Article 44) and Data Security Law (Ex. 1, Article 52).

19. I declare under penalty of perjury of the law of the United States of America that the foregoing is true and correct.

20. Executed on the 21st day of May 2024 in <u>Shanghai</u> China.

Respectfully submitted,

By: /s/ *[signature]*

Menghao Dai