UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YANGTZE MEMORY TECHNOLOGIES COMPANY, LTD., <br><br> Plaintiff, <br><br> v. <br><br> MICRON TECHNOLOGY, INC.,, et al., <br><br> Defendants. | Case No. 23-cv-05792-RFL   (TSH) <br><br> **DISCOVERY ORDER** <br> Re: Dkt. No. 147 |

Defendant and Counterclaimant Micron Technology, Inc. ("Micron") moves to compel Plaintiff and Counterclaim Defendant Yangtze Memory Technologies Ltd. and Counterclaim Defendant Yangtze Memory Technologies, Inc. (together, "YMTC") concerning Micron's interrogatories ("rogs") 12-15 and 22 and its requests for production ("RFPs") 15, 41-45, 48-51, 53, and 78.  Micron says these discovery requests concern two categories of information:  first, YMTC's importation, sales, offers for sale, sampling, testing, qualification, and related activity (the "Activity-Related Requests"); and second, discovery relating to former Micron employees who are named inventors of YMTC's Asserted Patents (the "Inventor-Related Requests"), which Micron says is relevant to its claim that it is the true owner of YMTC's Asserted Patents because a former Micron employee derived the inventions from others at Micron, worked on the inventions at Micron, and executed an assignment agreement with Micron to assign all interest in those inventions to Micron.  The Court held a hearing on October 17, 2024, and now issues the following order.

**A.     Activity-Related Requests**

Rog 12:  "Separately for each Accused YMTC Product identified in response to Interrogatory No. 11, identify every instance in which YMTC has tested, qualified, compliance

checked, or used the Accused YMTC Product in the United States, including without limitation the identity of the locations, including the address of the locations, of such testing, qualification, checking, or use, the facts and circumstances surrounding such testing, qualification, checking, or use, the identity of each person with knowledge of such testing or use, and the identity of each document or thing that relates to any of the foregoing."

The Court **GRANTS** the motion to compel as to rog 12 in part. Because the accused products are manufactured in China, every instance in which YMTC tested, qualified, compliance checked or used them in the United States is evidence of importation, as well as use in the U.S. (treating testing, qualifying and compliance checking as forms of use). However, the last phrase ("and the identity of each document or thing that relates to any of the foregoing") is overbroad. The Court revises that to "and the identity of documents and things sufficient to show the foregoing."

Rog 13: "Separately for each Accused YMTC Product identified in response to Interrogatory No. 11, identify and describe all sales and offers for sale of the Accused YMTC Products since January 1, 2016, including, on a monthly and per-country basis, the number of units sold, the revenue for each sale, the cost of each sale, the profits for each sale, the identity and location of the customer or purchaser for each sale, the identity and location of all distributors, importers, and exporters for each sale, the location to which the products were shipped, the location to which the products were billed, and the country from which the product was shipped."

A big issue in dispute between the parties is whether Micron can take discovery into YMTC's worldwide sales of the accused products. The Court thinks the answer is yes. Under *Brumfield v. IBG LLC*, 97 F.4th 854, 870-78 (Fed. Cir. 2024), foreign conduct can be part of patent damages if there is a sufficient causal relationship to domestic infringement. YMTC disputes that Micron will ever be able to make that showing. However, this is a discovery dispute, and Micron does not have to prove the merit of its damages theory into order to take discovery about its damages claims. *Cf. 3Com Corp. v. D-Link Systems, Inc.*, 2007 WL 949596, *3 (N.D. Cal. March 27, 2007) ("3Com is not required to prove its inducing infringement theory to be entitled to discovery of such information.").

1    At the hearing, Micron argued that the requested information could likely be pulled from a
2    database. YMTC disputed that was the case. As discussed at the hearing, the Court adds the
3    limitation "to the extent this information can be pulled from fields in one or more databases," and
4    otherwise **GRANTS** the motion as to rog 13.
5    Rog 14: "Describe in detail the discussions and negotiations surrounding each offer for
6    sale, sale, or use in, or import into, the United States of each Accused YMTC Product identified in
7    response to Interrogatory No. 11, including the individual(s) at the customer or purchaser with
8    whom You discussed or negotiated, the identity of the YMTC employees, directors, or officers
9    that participated in the offer for sale, sale, use, or import, the identity of any agreements that
10   resulted from such discussions or negotiations, and the identity of any documents and things
11   relating to any of the foregoing."
12   As discussed at the hearing, describing in detail the discussions and negotiations
13   surrounding relevant acts is burdensome and not proportional to the needs of the cases. Also,
14   naming each individual at each customer or purchaser is not proportional to the needs of the case.
15   Further, identifying each document that relates to these matters is disproportional. The Court
16   therefore **GRANTS** the motion in part as to rog 14, narrowed as follows: "Identify documents
17   sufficient to show each offer for sale, sale, or use in, or import into, the United States of each
18   Accused YMTC Product identified in response to Interrogatory No. 11, including the customer or
19   purchaser and their location, the identity of the YMTC employees, directors, or officers that
20   participated in the offer for sale, sale, use, or import, and the identity of any agreements relating to
21   the offer for sale, sale, use, or import."
22   Rog 15: "Describe YMTCL's and YMTI's past and present efforts to obtain approval or
23   qualification of the Accused YMTC Products in the United States, including by identifying the
24   individual(s) at each customer or potential customer with whom You Communicated about such
25   approval or qualification, identifying the YMTCL and YMTI officers, directors, or employees
26   involved with such approvals or qualifications, and identifying all documents and things relating
27   to such approvals or qualifications."
28   The Court **DENIES** the motion as to rog 15. Micron has not demonstrated that efforts to

3

1  obtain approval or qualification are themselves relevant conduct.  They are at most adjacent to
2  relevant conduct, which is importation, offer for sale, sale and use in the United States.  Nor does
3  the Court see how this rog seeks information that is relevant to damages.  Even if there is some
4  relevance to this information, this rog seeks a detailed narrative answer that is not proportional to
5  the needs of the case.

6  RFP 41: "Documents and things sufficient to identify the locations of manufacture,
7  fabrication, qualification, and testing for each and every Accused YMTC Product that You have
8  made, used, sold, licensed, offered for sale, or imported or made available in the United States or
9  abroad, including the names and addresses of the facilities for manufacturing, fabrication,
10  qualification, and testing."

11  The Court **GRANTS** the motion as to RFP 41.  Where the accused products are
12  manufactured and so on is relevant, for example, to showing that any present in the United States
13  are imports.  As for where the accused products are manufactured and so on that are sold, licensed,
14  etc. "abroad," as noted above, foreign conduct may be relevant to damages.

15  RFP 42: "All supply agreements, purchase agreements, sales agreements, joint venture
16  agreements, or partnership agreements between YMTC and any other companies, individuals,
17  governments or other persons or entities related to 3D NAND memory."

18  As became clear at the hearing, the parties did not sufficiently meet and confer concerning
19  RFP 42.  The Court **ORDERS** the parties to meet and confer further concerning this RFP.

20  RFP 43: "All documents and things related to YMTCL's and YMTI's past and present
21  efforts to obtain approval for or product qualification of the Accused YMTC Products in the
22  United States."

23  The Court **DENIES** the motion as to RFP 43.  As with rog 15, Micron has not shown that
24  past or present efforts to obtain approval or qualification are relevant.  And even if there is some
25  relevance, producing all such documents is not proportional to the needs of the case.

26  RFP 44: "All documents and things related to YMTCL's and YMTI's past and present
27  efforts to test, evaluate, qualify, or validate Accused YMTC Products in the United States,
28  including but not limited to any testing or other reports generated and communications relating

4

thereto."

As clarified at the hearing, Micron is seeking documents about efforts to test, evaluate, qualify, or validate the accused products in the United States – meaning that the testing, evaluating, qualifying or validating happened in the United States, rather than in some other country for later contemplated sales into the United States. This seems relevant because testing, evaluating, qualifying or validating are forms of using, and since the products are manufactured in China, this would also be evidence that importing had occurred. However, as discussed at the hearing, "all documents and things" seems overbroad. The Court **GRANTS** in part the motion as to RFP 44 but limits it to "documents sufficient to show YMTCL's and YMTI's past and present efforts to test, evaluate, qualify, or validate Accused YMTC Products in the United States."

RFP 45: "All marketing materials, white papers, application notes, brochures, pamphlets, flyers, sales collateral, or other documents provided to any customer or potential customer regarding the Accused YMTC products or YMTC's Xtacking® technology, regardless of version or generation."

As discussed at the hearing, once "or other documents" is struck from this RFP, the extent of the burden in responding to it depends on how many document custodians there are and what non-custodial sources are being searched. The Court does not see how this RFP would be burdensome if the search for responsive documents is limited to central files likely to contain marketing materials and to documents possessed by a reasonable number of custodians. Further, these documents are relevant to sales and offers to sell, including for foreign conduct that may be relevant to damages. The parties report that they do not have an agreement on custodians and non-custodial sources. Accordingly, the Court **ORDERS** the parties to meet and confer on document custodians and non-custodial sources. If the parties cannot reach an agreement, they should file another joint discovery letter brief. In the meantime, the Court **STRIKES** "or other documents" and "YMTC's Xtacking® technology" (because if it is not an accused YMTC product, the Court does not see why these documents would be relevant) and otherwise **GRANTS** the motion as to RFP 45.

RFP 48: "Documents and things sufficient to identify all intercompany transfers of the

1  Accused YMTC Products between YMTC and YMTI."

2  The Court **GRANTS** the motion as to RFP 48.  Because YMTI is in this district, transfers
3  of accused products from YMTC to YMTI would seem to be imports.  Technically, the RFP also
4  reaches transfers from YMTI to YMTC.  If that has ever happened, those would be accused
5  products that had previously been imported.

6  RFP 49:  "Documents and things sufficient to describe all sales or offers for sale of the
7  Accused YMTC Products made on behalf of YMTC by an employee, manager, member, director,
8  or board member of YMTI."

9  The Court **GRANTS** the motion as to RFP 49.  Because YMTI is in this district, its sales
10 or offers to sell would likely be in the United States, but as explained above, the Court also thinks
11 foreign sales may be relevant to damages, so sales or offers to sell by YMTI to other countries are
12 also relevant.

13 RFP 50:  "Documents sufficient to describe all sales and offers for sale of the Accused
14 YMTC Products since January 1, 2016, including, on a monthly and per-country basis, the number
15 of units sold, the revenue for each sale, the cost of each sale, the profits for each sale, the identity
16 and location of the customer or purchaser for each sale, the identity and location of all distributors,
17 importers, and exporters for each sale, the location to which the products are shipped, the location
18 to which the products are billed, and the country from which the product was shipped."

19 The Court **GRANTS** the motion as to RFP 50.  As explained above, global sales may be
20 relevant to damages.

21 RFP 51:  "Documents and things sufficient to show and describe in detail Your historical,
22 existing, and projected sales, monthly and quarterly revenue, profits, profit margins, pricing,
23 pricing strategies, market shares, and costs—including without limitation development, personnel,
24 material, advertising, promotion, sales commission, and equipment costs—for each Accused
25 YMTC Product existing or under development, from the date that You began to develop each
26 product."

27 It became clear at the hearing that the parties have not met and conferred sufficiently about
28 this RFP.  Accordingly, the Court **ORDERS** the parties to meet and confer concerning RFP 51.

RFP 53: "Documents and things sufficient to show the first prototypes, first testing, first release, and first use of each Accused YMTC Product."

The Court **GRANTS** the motion as to RFP 53. Where these events happened (such as whether they happened in the United States) is relevant.

## B.   Inventor-Related Requests

Rog 22: "For YMTC employees who were previously Micron engineers, including but not limited to Hongbin Zhu, Daesik Song, Jun Liu, Zhenyu Lu, Qian Tao, Yushi Hu, and Changhyun Lee, identify when each was hired by YMTC, current and previous job titles and responsibilities of each from the time of hire at YMTC to the present, and any documents or things that relate to or originate from any of the foregoing employees' work at Micron."

Having considered the matter further since the hearing, the Court **DENIES** the motion as to rog 22. In its third and fourth counterclaims, Micron alleges it is the true owner of the '322 and '254 patents because Hongbin Zhu invented that technology while employed at Micron and assigned ownership of it to Micron. However, rog 22 seeks information about every YMTC employee who was previously a Micron engineer, not just those who are listed as inventors of the '322 and '254 patents, and even most of the individuals listed by name in the rog are not named inventors for those patents. Further, the requested identification of documents is not limited to things relating to the '322 and '254 patents. The Court concludes that rog 22 is in no way calibrated at relevant and proportional discovery concerning Micron's third and fourth counterclaims. Micron argues that this rog is also relevant to its affirmative defenses of invalidity and standing. However, as pled in the answer, to the extent the invalidity defense rests on the contention that YMTC's patents actually belong to Micron, that is alleged only as to the '322 and '254 patents. (Paragraph 3 in Micron's affirmative defenses may very well embrace other invalidity defenses, but the one in paragraph 4 is specific to these two patents.) Similarly, Micron's standing defense is limited to the '322 and '254 patents, again based on the claim that Micron is the true owner of those patents. Accordingly, none of these theories of relevance comes anywhere close to justifying this rog. Rather, this rog seems like an attempt to take discovery into some sort of unpled trade secret misappropriation claim.

7

RFP 15: "All documents and things relating to communications between any Named Inventor and YMTC relating to the YMTC Asserted Patents, Related Patents or Patent Applications, Accused YMTC Products, or this Action."

The Court **GRANTS** the motion as to RFP 15. Although the RFP is broad, communications are likely to be custodial documents, and so the breadth of the RFP will necessarily be limited by the number of custodians, and presumably search terms for the named inventors would make responsive documents easy to find.

RFP 73: "Documents sufficient to identify all YMTC engineers who previously worked at Micron on Micron's 3D NAND memory products, processes, or technology."

RFP 74: "All documents and things obtained from Micron or from any present or former employee of Micron."

RFP 75: "All documents and things reflecting communications between any current or former employee of Micron and YMTC regarding Micron's 3D NAND memory products, processes, or technology including but not limed to Hongbin Zhu, Daesik Song, Jun Liu, Zhenyu Lu, Qian Tao, Yushi Hu, and Changhyun Lee."

RFP 76: "All documents and things related to 3D NAND memory obtained directly or indirectly from any current or former employee of Micron, including without limitation from Hongbin Zhu, Daesik Song, Jun Liu, Zhenyu Lu, Qian Tao, Yushi Hu, and Changhyun Lee."

RFP 77: "All documents, things, and communications related to Micron's 3D NAND memory products, their structure, their operation, or their fabrication obtained from Micron or any former employee of Micron, including without limitation from Hongbin Zhu, Daesik Song, Jun Liu, Zhenyu Lu, Qian Tao, Yushi Hu, and Changhyun Lee."

RFP 78: "All documents, things, and communications that originated from Micron or from a Micron employee, including all documents, things, and communications that any former employee of Micron, including without limitation Hongbin Zhu, Daesik Song, Jun Liu, Zhenyu Lu, Qian Tao, Yushi Hu, and Changhyun Lee, brought from Micron to YMTC."

The Court **DENIES** the motion as to RFPs 73-78. As with rog 22, there is simply no connection between these RFPs and the proffered theories of relevance. These RFPs look like an

8

attempt to develop a trade secret misappropriation claim that so far has not been pled.

**IT IS SO ORDERED.**

Dated: October 18, 2024

_____
THOMAS S. HIXSON
United States Magistrate Judge

9