1  JARED BOBROW (STATE BAR NO. 133712)
   jbobrow@orrick.com
2  JASON LANG (STATE BAR NO. 255642)
   jlang@orrick.com
3  DIANA M. RUTOWSKI (STATE BAR NO. 233878)
   drutowski@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
5  Menlo Park, CA  94025-1015
   Telephone:    +1 650 614 7400
6  Facsimile:    +1 650 614 7401

7  *Attorneys for Defendant and Counterclaim*
   *Plaintiff Micron Technology, Inc., and Defendant*
8  *Micron Consumer Products Group, LLC*

9
                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11
                      SAN FRANCISCO DIVISION
12

13  YANGTZE MEMORY TECHNOLOGIES           Case No. 3:23-cv-05792-RFL
    COMPANY, LTD.,
14                                         **MICRON'S OPPOSITION TO YMTC'S**
                    Plaintiff,             **MOTION TO DISMISS AND STRIKE**
15                                         **MICRON'S AMENDED**
           v.                              **COUNTERCLAIMS (DKT. 177)**
16
    MICRON TECHNOLOGY, INC., et al.,
17
                    Defendants.            **DEMAND FOR JURY TRIAL**
18
                                           Date: January 7, 2025
19  ─────────────────────────────          Time: 10:00 a.m. PT
                                           Judge: Hon. Rita F. Lin
20  MICRON TECHNOLOGY, INC.,               Courtroom: 15, 18th Floor

21                  Counterclaim Plaintiff,

22         v.

23  YANGTZE MEMORY TECHNOLOGIES
    COMPANY, LTD., and YANGTZE
24  MEMORY TECHNOLOGIES, INC.,

25                  Counterclaim Defendants.

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF THE ISSUES ........................................................................ 2

III.  FACTUAL BACKGROUND ............................................................................... 3

    A.  The YMTC Inventors Worked On Their Purported Inventions At Micron ........... 3

    B.  Case Management Of The Consolidated Action ................................................. 4

    C.  The Parties' Discovery Dispute ......................................................................... 5

IV.  YMTC'S MOTION TO DISMISS AND STRIKE SHOULD BE DENIED ..................... 6

    A.  Micron Did Not Need Good Cause To File Its Counterclaims .............................. 6

    B.  Micron Sufficiently Pleaded Its Counterclaims For Declaratory Judgment Of Ownership Of The Six YMTC Asserted Patents ............................................. 8

        1.  Micron's Counterclaims Meet the Plausibility Standard for Declaratory Judgment Claims ......................................................... 9

        2.  YMTC Misrepresents the Scope of the ex-Micron Employees' Assignment Agreements .................................................................... 10

    C.  Micron's Eighth And Ninth Defenses Likewise Meet The Applicable Pleading Standard, Despite YMTC's Mislabeling Of Them As "Affirmative" Defenses ................................................................................. 12

    D.  Counterclaims IV And V Are Not Time-Barred ................................................. 12

        1.  Counterclaims IV and V Are Not Time-Barred Under Idaho Law ........... 13

        2.  Constructive Notice Via Publication of a Patent Is a Fact Intensive Inquiry Not Suitable for Resolution on a Motion to Dismiss .................. 14

V.  CONCLUSION .................................................................................................. 15

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

-i-

MICRON'S OPPOSITION TO MOTION
TO DISMISS AND STRIKE
3:23-CV-05792-RFL

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adobe Sys. Inc. v. Coffee Cup Partners, Inc.*,
   No. C 11-2243 CW, 2012 WL 3877783 (N.D. Cal. Sept. 6, 2012) .......................................... 8

*Applera Corp.-Applied Biosystems Grp. v. Illumina, Inc.*,
   No. C 07-02845 WHA, 2008 WL 927963 (N.D. Cal. Apr. 4, 2008).................................... 15

*Applied Materials v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*,
   630 F. Supp. 2d 1084 (N.D. Cal. 2009) ................................................................................. 11

*Chen v. Los Angeles Truck Ctrs., LLC*,
   42 Cal. App. 5th 488 (2019).......................................................................................... 13, 14

*Conversion Logic, Inc. v. Measured, Inc.*,
   No. 2:19-cv-05546-ODW, 2019 WL 6828283 (C.D. Cal. Dec. 13, 2019) ............................ 11

*Dunford v. MusclePharm Corp.*,
   907 F.3d 595 (9th Cir. 2018)................................................................................................. 10

*Eastman v. Apple Inc.*,
   No. 18-cv-05929-JST, 2018 WL 5982440 (N.D. Cal. Nov. 14, 2018)............................. 9, 10

*Fibrogen, Inc. v. Hangzhou Andao Pharm. Ltd.*,
   No. 22-cv-07148-AMO, 2024 WL 1199018 (N.D. Cal. Mar. 20, 2024).............................. 11

*G&G Closed Cir. Events, LLC v. Benjamin*,
   No. 22-cv-04144-SI, 2023 WL 2934930 (N.D. Cal. Apr. 12, 2023) .................................... 12

*Gen. Bedding Corp. v. Echevarria*,
   947 F.2d 1395 (9th Cir. 1991)............................................................................................... 15

*Gerber Plumbing Fixtures, LLC v. Amerifreight, Inc.*,
   No. 2:15-cv-04146-ODW(RAO), 2015 WL 7259717 (C.D. Cal. Nov. 16,
   2015) ....................................................................................................................................... 8

*Indus. Indem. Ins. Co. v. U.S.*,
   757 F.2d 982 (9th Cir. 1985)................................................................................................. 14

*J&J Sports Prods, Inc. v. Vizcarra*,
   No. 11-1151 SC, 2011 WL 4501318 (N.D. Cal. Sept. 27, 2011) ......................................... 12

*Kanaan v. Yaqub*,
   709 F. Supp. 3d 864 (N.D. Cal. 2023) ................................................................................. 12

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

-ii-

MICRON'S OPPOSITION TO MOTION
TO DISMISS AND STRIKE
3:23-CV-05792-RFL

*Katz v. Avanir Pharms.*,
No. 06cv0496 DMS (LSP), 2006 WL 8455483 (S.D. Cal. Sept. 11, 2006) .......................... 15

*Ledesma v. Jack Stewart Produce, Inc.*,
816 F.2d 482 (9th Cir. 1987) ........................................................................................... 14

*M.A. Silva Corks USA, LLC v. M.A. Silva Holdings, Inc.*,
No. 22-cv-04345-AMO, 2024 WL 1180999 (N.D. Cal. Mar. 18, 2024) ............................... 8

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) ........................................................................................................ 9

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
96 F.3d 1151 (9th Cir. 1996) ......................................................................................... 13

*Platte Anchor Bolt, Inc. v. IHI, Inc.*,
352 F. Supp. 2d 1048 (N.D. Cal. 2004) ........................................................................... 6

*Polo v. Shwiff*,
No. C 12-04461 JSW, 2013 WL 1797671 (N.D. Cal. Apr. 29, 2013) ................................ 12

*SEB Inv. Mgmt. AB v. Align Tech., Inc.*,
485 F. Supp. 3d 1113 (N.D. Cal. 2020) ...................................................................... 9, 13

*Steiner v. Vi-Jon, Inc.*,
723 F. Supp. 3d 784 (N.D. Cal. 2024) ........................................................................... 10

*Stoltz v. Fry Foods, Inc.*,
60 F. Supp. 3d 1132 (D. Idaho 2014) ............................................................................ 14

*Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*,
482 F.3d 1330 (Fed. Cir. 2007) ....................................................................................... 9

*Versata Software, Inc. v. Configit A/S*,
No. LA CV20-09019 .................................................................................................... 15

*Wang v. Palo Alto Networks*, *Inc.*,
No. C 121-05579 WHA, 2014 WL 1410346 (N.D. Cal. Apr. 11, 2014) ............................ 15

**Statutes**

28 U.S.C. § 1367 ............................................................................................................ 13

35 U.S.C. § 101 .............................................................................................................. 3

35 U.S.C. § 116 .............................................................................................................. 9

35 U.S.C. § 271(b) ........................................................................................................... 9

Cal. Civ. Proc. Code § 337 ............................................................................................. 13

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

-iii-

MICRON'S OPPOSITION TO MOTION
TO DISMISS AND STRIKE
3:23-CV-05792-RFL

Idaho Code § 5-216 .................................................................................................................... 13

**Other Authorities**

Fed. R. Civ. P. 12 .......................................................................................................... 5, 6, 7, 12

Fed. R. Civ. P. 15 ............................................................................................................. 5, 7, 8

Fed. R. Civ. P. 16 ................................................................................................................ 1, 8

Orrick, Herrington &
Sutcliffe LLP
Attorneys at Law
Silicon Valley

-iv-

MICRON'S OPPOSITION TO MOTION
TO DISMISS AND STRIKE
3:23-CV-05792-RFL

## I.      INTRODUCTION

In its Motion to Dismiss and Strike (Dkt. 177) ("Mot."), YMTC manufactures arguments that ignore and mischaracterize the procedural posture of the case, Micron's pleadings, and the law.

**First**, in arguing that Micron did not timely assert certain counterclaims, YMTC ignores that in the consolidated action, the parties agreed—and the court ordered—that the parties may amend their pleadings by October 31, 2024.  Neither that order nor the parties' joint case management statement for the consolidated action ("JCMS") restricted Micron's ability to assert additional defenses or counterclaims.  YMTC argues that Micron was required to show good cause to amend the case schedule under Rule 16.  Not so.  Micron's October 22 Answer and Amended Counterclaims and its October 31 Amended Answer and Amended Counterclaims were filed pursuant to Rule 15 in compliance with the operative case schedule.

**Second**, YMTC leans heavily on a mischaracterization of Judge Hixson's discovery order to cast Micron's pleadings as "bad faith" filings.  Specifically, it argues that because Judge Hixson denied certain of Micron's discovery requests, Micron's amended pleadings are an attempt to skirt his order.  In fact, Judge Hixson *granted* Micron's discovery into communications involving *any named inventor* and this Action and denied only as to requests that extended to "every YMTC employee who was previously a Micron engineer."  YMTC's attempt to cast the counterclaims as an end run around the discovery order is belied by the fact that Micron will be getting discovery of communications involving all the named inventors.

**Third**, YMTC's arguments that Micron's counterclaims lack sufficient factual allegations are self-contradictory and based on semantics, not substance.  On one hand, it critiques Micron's allegations about the scope of its former employees' work arguing that they track too closely the language of the patent claims.  On the other hand, it argues that the allegations do not track closely enough to the specific language of the employment agreements.  This is semantics, not a fault in the pleadings.  Micron pleaded the specific Micron products and features on which each individual worked and how each individual's work mirrors the claimed inventions of at least one claim of each of the YMTC Asserted Patents.  YMTC also argues Micron's allegations are not plausible given that YMTC allegedly filed the patents one or two years after the employees left Micron.  But

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

-1-

MICRON'S OPPOSITION TO MOTION
TO DISMISS AND STRIKE
3:23-CV-05792-RFL

this is Micron's point: numerous former Micron employees left Micron, joined YMTC, and within a year or two filed patent applications claiming material they worked on and learned at Micron. YMTC faults Micron for the clear overlap between the features of Micron products on which these former Micron employees worked and the YMTC Asserted Patent claim language, but this just shows that these former employees took what they worked on at Micron, either individually or with other Micron employees, and turned around a year or two later and unlawfully included them in patent applications they filed for YMTC. Micron's suspicions and ongoing investigation into the work these individuals performed at Micron led to Micron's assertion of its well-pleaded defenses and counterclaims in the consolidated action now before the Court.

**Finally**, in arguing that two of Micron's counterclaims are time-barred, YMTC applies the wrong statute of limitations. YMTC invokes California's four-year statute of limitations and, in doing so, fails to analyze Idaho's interest in applying its five-year statute under California's governmental interest analysis (e.g., Micron is an Idaho-headquartered counterclaimant,[1] the former Micron employees who filed the YMTC patents worked in Idaho, and events giving rise to the counterclaims occurred in Idaho, not California). Under Idaho's five-year statute, the counterclaims are not time-barred, even accepting YMTC's timeline as true. Regardless, YMTC's arguments about notice present a factual issue inappropriate for resolution at the pleading stage.

## II.    STATEMENT OF THE ISSUES

1.    Whether Micron's Counterclaims V-VIII should be struck for failure to show good cause, when Micron timely filed them pursuant to the consolidated case schedule and Rule 15, which do not require a showing of good cause.

2.    Whether Micron's Counterclaims III-VIII, which seek declaratory judgment of patent ownership should be dismissed for failure to state a claim when Micron met the applicable pleading standard for declaratory judgment claims by pleading facts about the inventors' employment agreements at Micron, the products and technologies on which they worked at Micron, and the claims of the Asserted Patents.

---

[1] Micron Technology, Inc. is the sole counterclaim-plaintiff and the sole party to the assignment agreements with its ex-employees. Dkt. 170 ("Am. Ans.") (Am. Counterclaims) ¶¶ 20-44.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

-2-

MICRON'S OPPOSITION TO MOTION
TO DISMISS AND STRIKE
3:23-CV-05792-RFL

3.       Whether Micron's eighth defense that YMTC lacks standing as to the '254, '322, '378, '806, '031, and '957 patents and its ninth defense that YMTC is thus estopped from asserting these patents should be struck for the same reasons as Counterclaims III-VIII when they are likewise supported by well-pleaded facts and YMTC incorrectly invokes the pleading standard for "affirmative" defenses.

4.       Whether counterclaims IV and V should be dismissed as time-barred when the *Idaho*'s five-year statute of limitations applies (not California's four-year statute as argued by YMTC) and, in any event, there is a factual dispute about constructive notice.

## III.    FACTUAL BACKGROUND

### A.   The YMTC Inventors Worked On Their Purported Inventions At Micron

On November 9, 2023, YMTC filed an action asserting eight patents related to 3D NAND memory technology against Micron ("YMTC I"). Then, on July 12, 2024, YMTC filed a separate action against Micron asserting that Micron infringes another 11 of YMTC's patents ("YMTC II"), 10 of which relate to 3D NAND memory technology. Given the overlap between the two actions (e.g., both accuse the same Micron products and focus on 3D NAND technology), Micron filed a motion to consolidate YMTC I and YMTC II on July 29, 2024.[2] Dkt. 88.

Before consolidation, Micron put YMTC on notice of its concern that Micron's former employees were filing patents at YMTC on work that they performed at Micron. On June 27, 2024, Micron served its preliminary invalidity contentions as to the eight YMTC I patents. There, Micron asserted that several YMTC patents are invalid for improper inventorship under 35 U.S.C. § 101 because they improperly omit Micron employees as named inventors. The inventions claimed in these patents were conceived and developed by Micron employees. As noted in those contentions, Micron was (and still is) actively seeking discovery from YMTC related to inventorship of the patents, but YMTC "refused to provide responsive information or documents" to allow Micron to investigate these issues. Rutowski Decl., Ex. 1 at 38-39, 80-81, 124-125, and 158-159.

Notably, the relevant inventors worked for years at Micron's Boise, Idaho campus[3] before

---

[2] Only one patent, first asserted in YMTC II, is not directed toward 3D NAND memory technology.

[3] Hongbin Zhu (Am. Ans. (Am. Counterclaims) at ¶¶ 20-21), Qian Tao (*id.* at ¶¶ 26-27), Yushi Hu

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

-3-

MICRON'S OPPOSITION TO MOTION
TO DISMISS AND STRIKE
3:23-CV-05792-RFL

1  moving to China to work for YMTC.[4]  These former employees executed employment agreements

2  with Micron obligating them to assign to Micron intellectual property that was made, created,

3  developed, written, reduced to practice, or conceived of, either solely or jointly with others, during

4  the period of their employment at Micron.  Am. Ans. (Am. Counterclaims) ¶¶ 20, 26, 32, 36, 41.

5  **B.  Case Management Of The Consolidated Action**

6  The Court granted Micron's motion to consolidate YMTC I and YMTC II on August 21,

7  2024.  *See* Dkt. 106.  The order provided that YMTC could "not add new claims or allegations not

8  present in the operative complaints from *YMTC I* and *YMTC II*" in the consolidated complaint.  *Id.*

9  at 2.  It did not contain any restrictions on Micron's ability to plead defenses or counterclaims.  The

10  order set a new case management conference and required the parties to submit a new "joint case

11  management statement with a proposed case schedule" for the consolidated case.  *Id.*

12  On August 23, 2024, Micron contacted YMTC to discuss scheduling and the JCMS.  After

13  nearly two weeks of negotiation and exchanging drafts, YMTC and Micron filed the JCMS on

14  September 11, 2024.  Dkt. 133.  The JCMS included no restrictions on Micron's ability to raise

15  additional defenses and counterclaims—to the contrary, the JCMS anticipated such amendments.

16  Dkt. 133 at 5.  Thus, the "parties also propose[d] deadlines for amendment of the pleadings and the

17  addition of parties," namely, October 31, 2024.  *Id.*  Nothing in the JCMS required Micron to show

18  good cause to amend its defenses and counterclaims by October 31.

19  In the meantime, YMTC filed its Consolidated Complaint on September 3, 2024 (Dkt. 128)

20  and, thereafter, Micron timely answered on September 17, 2024 (Dkt. 139).

21  The Court held a joint case management conference on September 18, 2024, and

22  subsequently issued a scheduling order consistent with the parties' agreement that the "Last Day to

23  Amend Pleadings is 10/31/2024."  Dkt. 141.  The scheduling order imposed no restrictions related

24  to defenses or counterclaims that Micron could raise by that deadline.  *Id.*  On October 8, 2024,

25

26  (*id.* at ¶¶ 32-33), Jun Liu (*id.* at ¶¶ 36-37), and Changhyun Lee (*id.* at ¶¶ 41-42).

27  [4] These ex-Micron employees are named on the face of YMTC's patents with addresses in China. *See, e.g.,* '322 and '254 patents ("Hongbin Zhu, Wuhan (CN)"); '378 patent and '806 patents ("Qian Tao, Hubei (CN); Yushi Hu, Hubei (CN)"); '031 patent ("Jun Liu, Hubei (CN)"); '957 patent ("Changhyun Lee, Wuhan (CN)").

28

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

-4-

MICRON'S OPPOSITION TO MOTION
TO DISMISS AND STRIKE
3:23-CV-05792-RFL

YMTC filed its First Amended Consolidated Complaint ("FACC") (Dkt. 151) and moved to dismiss Micron's answer and counterclaims (Dkt. 152).

On October 22, 2024, Micron timely filed an Answer and Amended Counterclaims in response to YMTC's FACC (Dkt. 164) ("Micron's FACC Answer") under Fed. R. Civ. P. 15(a)(3) (as to the Answer, 14 days after YMTC's FACC) and (a)(1)(B) (as to the Counterclaims, within 21 days after a motion under Rule 12(b)).[5] In its FACC Answer, Micron pleaded several counterclaims and defenses related to inventorship issues. Specifically, Micron asserted as a Seventh[6] Defense that YMTC lacks standing to assert six YMTC Asserted Patents because Micron is the true owner of those patents; a related Eighth Defense of Estoppel; and six counterclaims for Declaratory Judgment of Ownership of the same six YMTC Asserted Patents. Dkt. 164 (Defenses) ¶¶ 11-15, (Counterclaims) ¶¶ 64-87. Micron filed an Amendment to its FACC Answer under Fed. R. Civ. P. 15(a)(2) with YMTC's consent on October 31, 2024.[7]

Micron's FACC Answer, as well as its October 31 amendment thereto, include specific information about the relevant former Micron employees-turned-YMTC-inventors who are at the heart of the counterclaims and defenses at issue on this motion. Specifically, for each former employee, Micron pleaded facts related to the products and technology on which they worked at Micron and how their work relates to the relevant YMTC Asserted Patents. Dkt. 164 (Counterclaims) at ¶¶ 20-44; Am. Ans (Am. Counterclaims) ¶¶ 20-44.

**C. The Parties' Discovery Dispute**

While the parties prepared and filed pleadings in the consolidated case, they also engaged in a series of meet and confers over several discovery issues. The parties reached an impasse on various Micron discovery requests, including those seeking information and documents about the inventors on YMTC Asserted Patents, including those who are ex-employees of Micron. The parties submitted a joint discovery letter brief on October 4, 2024, addressing these and other issues.

---

[5] Micron's FACC Answer mooted YMTC's motion to dismiss.

[6] Standing and estoppel were seventh and eighth defenses in Micron's FACC Answer and were renumbered to eighth and ninth defenses on October 31, 2024.

[7] Micron filed this amended answer to correct a typographical error.

1    Dkt. 147.  After a hearing, Judge Hixson granted Micron discovery into "communications between

2    *any Named Inventor* and YMTC relating to the YMTC Asserted Patents, Related Patents, or Patent

3    Applications, Accused YMTC Products, or this Action" and denied certain requests that covered

4    former Micron employees who are not named inventors.  Dkt. 163 at 8 (emphasis added).

5    **IV.    YMTC'S MOTION TO DISMISS AND STRIKE SHOULD BE DENIED**

6         **A.  Micron Did Not Need Good Cause To File Its Counterclaims**

7         YMTC attempts to manufacture an issue by arguing that Micron needed good cause to file

8    Counterclaims V to VIII.  Mot. at 7-8, 12-13.  YMTC in essence contends that Micron's

9    counterclaims involving the YMTC I patents in the consolidated action should be governed by the

10    schedule in the pre-consolidation YMTC I action, even though the consolidated action is subject to

11    a new schedule. The Court should reject this argument on multiple grounds.

12         As an initial matter, YMTC's Motion to Strike Counterclaims V to VIII on procedural

13    grounds is not a proper motion under Rule 12(f)(2), which provides that a court may strike only an

14    "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R.

15    Civ. P. 12(f).  YMTC makes no showing under this Rule.  Indeed, in most cases, "[a] motion to

16    strike should not be granted unless the matter to be stricken clearly could have no possible bearing

17    on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057

18    (N.D. Cal. 2004).  Counterclaims V to VIII are not strikable subject matter.  But even if they were,

19    Micron did not need good cause to file them.

20         When this Court consolidated the cases on August 21, 2024, it set a new case management

21    conference and ordered the parties to submit a new JCMS. Dkt. 106 at 1-2. While the Court ordered

22    YMTC to file a consolidated complaint that "shall not add new claims or allegations not present in

23    the operative complaints from *YMTC I* and *YMTC II*," it placed no restrictions on defenses or

24    counterclaims that Micron could file in response to YMTC's consolidated complaint.  *Id.*  The

25    parties negotiated and agreed upon a JCMS, which they filed on September 11, 2024, that "t[ook]

26    the assertion of Micron's counterclaims into account" and included a deadline to amend pleadings

27    on October 31, 2024, without requiring a showing of good cause.  Dkt. 133.  Consistent with this,

28    the Court conducted a Case Management Conference and ordered a schedule that set October 31,

2024, as the "Last Day to Amend Pleadings." Dkt. 141. Consistent with the JCMS, the order did not restrict Micron from asserting additional defenses or counterclaims by that deadline and did not require a showing of good cause. *Id.*

YMTC now seeks to walk back its agreement, when all Micron did was file additional counterclaims, as contemplated by the JCMS, within the time limits proposed by the parties and entered by the Court. Specifically, YMTC filed its FACC (Dkt. 151) and Motion to Dismiss (Dkt. 152) on October 8, 2024, in response to which Micron filed its Answer and Amended Counterclaims (Dkt. 164) pursuant to Rule 15(a)(3) and 15(a)(1)(B) on October 22, 2024. Regarding the answer, Rule 15(a)(3) provides that "any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later." Fed. R. Civ. P. 15(a)(3). Regarding the counterclaims, Rule 15(a)(1)(B) provides that a "party may amend its pleading once as a matter of course no later than: … 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). Micron thus timely filed its Answer and Amended Counterclaims (Dkt. 170) on October 22, 14 days after YMTC filed its FACC and Motion to Dismiss on October 8, 2024.

Micron's October 22, 2024 Answer and Amended Counterclaims included counterclaims for a declaratory judgment of ownership of the '254, '322, '378, '806, '031, and '957 patents. On the October 31, 2024 deadline to amend pleadings, Micron filed its second Amended Answer and Counterclaims with YMTC's consent.[8] Dkt. 141. Because Micron filed its counterclaims on October 22 pursuant to Rule 15 (a)(1)(B) (as a matter of course) and on October 31 pursuant to Rule 15(a)(2) (with YMTC's consent)—both *by* the October 31, 2024 deadline to amend pleadings

---

[8] YMTC gave "written consent that Micron may file its [second] Amended Answer" and stipulated that Micron may refile its Amended Counterclaims, which Micron informed YMTC were "with *no revisions* thereto." Dkt. 168. YMTC now argues that Micron lacked good cause to refile those Amended Counterclaims. While Micron does not agree that Counterclaims V to VIII are belated because they were refiled before the Court's deadline, by consenting to Micron's refiling of its Amended Counterclaims on October 31, 2024, YMTC waived the argument that these counterclaims should struck for lack of good cause. Fed. R. Civ. P. 15(a)(2) ("A party may amend the pleading only with the *opposing party's written consent or* the court's leave").

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

-7-

MICRON'S OPPOSITION TO MOTION
TO DISMISS AND STRIKE
3:23-CV-05792-RFL

(Dkt. 141)[9]—Micron did not need to seek modification of the schedule under Rule 16(b)(4) and thus did not need to show "good cause." *See, e.g., Gerber Plumbing Fixtures, LLC v. Amerifreight, Inc.*, No. 2:15-cv-04146-ODW(RAO), 2015 WL 7259717, at *4 (C.D. Cal. Nov. 16, 2015) (argument that filing a pleading pursuant to Rule 15 requires "good cause" is "frivolous").

YMTC's accusations that Micron amended its counterclaims in bad faith are unfounded. Micron diligently investigated its claims before filing. Were good cause required, it existed. **First**, contrary to YMTC's false statements that Judge Hixson "denied" Micron's discovery, he granted Micron discovery about the *named inventors* of the YMTC Patents, which include the five ex-Micron employees. *See* Dkt. 163 at 8. **Second,** Micron put YMTC on notice of its belief that YMTC lacks ownership with respect to the YMTC I patents (i.e., '378, '806, '031 and '957 Patents) when Micron served its YMTC I invalidity contentions on June 27, 2024. *See, e.g.,* Rutowski Decl., Ex. 1 at 158-159 (explaining that Changhyun Lee worked on 3D NAND technology at Micron and conceived of the invention claimed in a YMTC Asserted Patent at Micron); *see also id.*, at 38-39, 80-81, 124-125. Thus, YMTC had notice months ago that certain ex-Micron employees used their prior work and developments at Micron to file the YMTC Asserted Patents. **Third**, Micron filed its counterclaims and defenses while the case is still in its early stages, prior to claim construction, prior to any depositions, and with nearly nine months left for fact discovery (set to close August 26, 2025). Thus, far from bad faith, Micron would have good cause to file, even if it were required.

### B. Micron Sufficiently Pleaded Its Counterclaims For Declaratory Judgment Of Ownership Of The Six YMTC Asserted Patents

Although YMTC presents two "reasons" why Micron's Counterclaims III to VIII "fail" and should be dismissed, its arguments mischaracterize Micron's pleadings—which provide sufficient detail under the applicable pleading standard—and make semantic arguments about the former

---

[9] *M.A. Silva Corks,* which YMTC cites (Mot. at 7), discusses amending pleadings ***after*** the court's deadline has passed. It is thus irrelevant here because Micron filed its Amended Counterclaims before the Court's deadline. *M.A. Silva Corks USA, LLC v. M.A. Silva Holdings, Inc.*, No. 22-cv-04345-AMO, 2024 WL 1180999, at *4 (N.D. Cal. Mar. 18, 2024). *Adobe Systems* (Mot. at 7) is similarly inapplicable because it addresses good cause to amend a pleading "***after*** the date specified in a scheduling order." *Adobe Sys. Inc. v. Coffee Cup Partners, Inc.*, No. C 11-2243 CW, 2012 WL 3877783, at *6 (N.D. Cal. Sept. 6, 2012) (emphasis added).

Micron employees' employment agreements.  Mot. at 8-12.

### 1.  <u>Micron's Counterclaims Meet the Plausibility Standard for Declaratory Judgment Claims</u>

As an initial matter, YMTC misstates the pleading standard for Micron's declaratory judgment claims.  A declaratory judgment plaintiff is only required to satisfy "standing and ripeness, by showing under 'all the circumstances' an actual or imminent injury caused by the defendant … is of 'sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1338 (Fed. Cir. 2007) (citations omitted).  At the motion to dismiss stage, courts only need to evaluate "whether the facts alleged [taken as true], under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  There are actual, redressable, and immediate controversies between MTI and YMTC here.  Micron pleaded that the ex-Micron employees signed Assignment Agreements with Micron during their employment; assigned the right, title, and interest to their work to Micron; departed Micron to join YMTC; and have now filed patents with claims nearly identical to their work at Micron.  Am. Ans. (Am. Counterclaims) ¶¶ 20-44.  Micron is requesting relief based on the concrete set of facts in its counterclaims.  *Id.*

In contrast, YMTC relies on plausibility standards for *patent infringement* under 35 U.S.C. § 271(b) and *correction of ownership* under 35 U.S.C. § 116 that are not applicable to Micron's declaratory judgment claims.[10]  Mot. at 10.  In the challenged counterclaims, MTI is not making patent infringement claims or seeking correction of ownership at this time.

That said, even under YMTC's caselaw, MTI pleaded sufficient facts.  YMTC relies primarily on *Eastman*, to argue that Micron must "plead facts about **what** each former Micron employee allegedly 'made, created, developed, written, reduced to practice, or conceived' while

---

[10]  YMTC waived any argument as to the sufficiency of Micron's well-pleaded declaratory judgment claims because it addressed only plausibility standards for other causes of action.  *SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 485 F. Supp. 3d 1113, 1135 (N.D. Cal. 2020).

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

-9-

MICRON'S OPPOSITION TO MOTION
TO DISMISS AND STRIKE
3:23-CV-05792-RFL

1    still at Micron." Mot. at 9; *Eastman v. Apple Inc.*, No. 18-cv-05929-JST, 2018 WL 5982440 (N.D.

2    Cal. Nov. 14, 2018). No such quote is found in *Eastman*, which provides that a plausible claim of

3    joint ownership must identify the "specific patent claim" and how the alleged inventor's "purported

4    contributions to the Patents align with particular claims." *Id.*, at *6 (internal quotation marks

5    omitted). YMTC acknowledges that Micron did this. Specifically, YMTC pointed out that, as an

6    example, Micron alleged that the former Micron employees "worked on a list of things that largely

7    track the language of the YMTC patent claims at issue." Mot. at 9. YMTC cannot simultaneously

8    argue that Micron's counterclaims should be dismissed based on caselaw purportedly requiring that

9    Micron identify the claim terms to which the former employees contributed, on the one hand, but

10   then turn around and fault Micron for doing so because it tracks the claims too closely, on the other.

11   Mot. at 9-10. YMTC also ignores that Micron pleaded the specific 3D NAND designs and product

12   ID numbers to which the former employees contributed and described what these former employees

13   "made, created, developed, written, reduced to practice, or conceived." Am. Ans. (Am.

14   Counterclaims) ¶¶ 20-21, 26-27, 32-33, 36-37, 41-42.

15            YMTC's argument also incorrectly assumes that Micron needed to plead more information

16   than necessary. Specifically, YMTC faults Micron for not providing information or documents in

17   its pleading such as "lab notebooks, invention disclosures, and technical documents." Mot. at 9.

18   But the law does not require explicit references to such material at the pleading stage. *Steiner v.*

19   *Vi-Jon, Inc.*, 723 F. Supp. 3d 784, 791 (N.D. Cal. 2024) ("[p]laintiffs are not required to divulge

20   their testing data or any other technical particulars in the pleading so that Defendant can attack

21   them as a factual matter."); *Dunford v. MusclePharm Corp.*, 907 F.3d 595, 604 n.8 (9th Cir. 2018)

22   ("plaintiffs are generally not expected to provide evidence in support of their claims at the pleading

23   stage").

24            **2.   YMTC Misrepresents the Scope of the ex-Micron Employees' Assignment**

25                 **Agreements**

26            YMTC's other "reason" why Micron's counterclaims purportedly fail fares no better.

27            **First,** YMTC makes a semantic argument that because the ex-Micron employees'

28   agreements obligate them to assign works "made, created, *developed*, written, reduced to practice,

1   or conceived" at Micron, Micron's allegations related to what the ex-employees "had access to,"

2   were "involved with," "knew about," "worked on," or "jointly collaborated [on]" are insufficient.

3   Mot. at 10 (emphasis added).  However, this argument is both flawed and gets ahead of itself.  It is

4   flawed because (i) it cherry-picks allegations while ignoring allegations that do mirror the

5   assignment language, such as those regarding "*development*" work, *see, e.g.*, Am. Ans. (Am.

6   Counterclaims) ¶¶ 21-23, 27-28, 33-34, 37-38, 42 (emphasis added), (ii) it ignores language in the

7   assignment agreements that covers works made, created, developed, written, reduced to practice

8   "*in whole or in part, either solely or jointly with others*," *see, e.g., id*. ¶¶ 20, 26, 32, 36, 41 (emphasis

9   added).  It gets ahead of itself because whether, for example, Micron's factual allegations fall within

10  the ambit of the terms used in the contract is not a question that can be resolved on a motion to

11  dismiss.  Determining what the employees did is a question of fact and comparing that to the

12  contractual language is a matter for another day.

13      **Second,** YMTC's argument that Micron's Assignment Agreements violate California

14  public policy because they would capture purported "innovations…subsequently conceived at

15  YMTC" is baseless. The language of these Assignment Agreements addresses works "during the

16  period of time [the employee is] in the employ of or providing service to [Micron]." Mot. at 11;

17  Am. Ans. (Am. Counterclaims) ¶¶ 20, 26, 32, 36, 41.  Such language is valid to protect Micron's

18  proprietary information, and the facts in this case are nothing like those in *Fibrogen*.  There, the

19  court found the assignment agreement to be unlawful because it contractually required an employee

20  to assign works developed for a period of "one (1) year **after termination** of employment" to the

21  former employer, which impermissibly "sweep[s] up inventions and discoveries unrelated to the

22  [former employer's] proprietary information."  *Fibrogen, Inc. v. Hangzhou Andao Pharm. Ltd.,*

23  No. 22-cv-07148-AMO, 2024 WL 1199018 at *2, 7 (N.D. Cal. Mar. 20, 2024) (internal quotation

24  marks omitted); *see also Applied Materials v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*,

25  630 F. Supp. 2d 1084, 1090 (N.D. Cal. 2009); *Conversion Logic, Inc. v. Measured, Inc.*, No. 2:19-

26  cv-05546-ODW (FFMx), 2019 WL 6828283, at *7 (C.D. Cal. Dec. 13, 2019).  The Assignment

27  Agreements and the allegations here are directed at work that the named inventors performed while

28  *at Micron* and subsequently used to file patents at YMTC.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

-11-

MICRON'S OPPOSITION TO MOTION
TO DISMISS AND STRIKE
3:23-CV-05792-RFL

### C. Micron's Eighth And Ninth Defenses Likewise Meet The Applicable Pleading Standard, Despite YMTC's Mislabeling Of Them As "Affirmative" Defenses

YMTC argues that Micron's eighth and ninth defenses should be struck for the same reasons as Micron's counterclaims. Mot. at 12. For the reasons discussed above, Micron sufficiently pleaded these defenses under any standard. *See* §§ IV.B.

That said, YMTC argues for the wrong pleading standard. Specifically, it argues that "the heightened pleading standard under *Twombly/Iqbal* applies to affirmative defenses" (Mot. at 12-13), but Micron did not plead its defenses as "affirmative defenses." *Kanaan v. Yaqub*, 709 F. Supp. 3d 864, 869 (N.D. Cal. 2023) (a defendant "is not limited to affirmative defenses, and Rule 12(h) characterizes lack of subject matter jurisdiction (of which lack of standing is one form) as a 'legal defense'" not an affirmative defense). Standing is not an affirmative defense because YMTC must prove that it *has* standing to sue; Micron is not required to prove that YMTC lacks standing. *See J&J Sports Prods, Inc. v. Vizcarra*, No. 11-1151 SC, 2011 WL 4501318, at *2 (N.D. Cal. Sept. 27, 2011) ("*plaintiff* must plead and ultimately prove standing, lack of standing is not an affirmative defense under federal law") (internal quotation marks and citations omitted); *Polo v. Shwiff*, No. C 12-04461 JSW, 2013 WL 1797671, at *3 (N.D. Cal. Apr. 29, 2013); *G&G Closed Cir. Events, LLC v. Benjamin*, No. 22-cv-04144-SI, 2023 WL 2934930, at *4 (N.D. Cal. Apr. 12, 2023). Micron's estoppel defense is based on YMTC's lack of standing to assert the '254, '322, '378, '806, '031, and '957 patents, because YMTC will be estopped from asserting those patents for lack of standing. The cases on which YMTC relies are inapposite because they address *affirmative* defenses (Mot. at 13), not defenses.[11]

### D. Counterclaims IV And V Are Not Time-Barred

Micron's Counterclaims IV and V should not be dismissed for two independent reasons:

---

[11] YMTC's complaints about "fair notice" (Mot. at 12-13, fn. 6, 7) fail for the reasons above. *See, supra*, §§ III.A, IV.A. Micron pleaded facts identifying the technologies and products on which the ex-employees "worked [] and jointly collaborated with other engineers at Micron." Am. Ans. (Am. Counterclaims) ¶¶ 20-21, 26-27, 32-33, 36-37, 41-42. YMTC has been on notice that its patents are infected with inventorship issues since at least June 26, 2024, when Micron served its invalidity contentions related to the YMTC I patents. Besides, this case is in its early stages. Claim construction has yet to begin, neither party has taken depositions, and the close of fact discovery is almost nine months away. The parties have ample time to investigate these issues.

(1) under the applicable (Idaho) five-year statute of limitations ("SOL"), the counterclaims are timely even under YMTC's timeline; and (2) it would be improper to dismiss these claims at the pleading stage because constructive notice, upon which YMTC relies, is a fact-intensive inquiry.

### 1. Counterclaims IV and V Are Not Time-Barred Under Idaho Law

"In a federal question action where the federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state – in this case, California." *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996). The Court has supplemental jurisdiction over MTI's ownership counterclaims pursuant to 28 U.S.C. § 1367, so California's governmental interest analysis controls here.[12] Am. Ans. (Am. Counterclaims) ¶ 7.

California's "governmental interest" test involves a three part inquiry: (1) whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different; (2) if there is a difference, each jurisdiction's interest in the application of its own laws to determine whether there is a true conflict; (3) if there is a true conflict, the court carefully evaluates and compares the nature and strength of the interest of each jurisdiction "to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state" and then ultimately applies "the law of the state whose interest would be the more impaired if its law[s] were not applied." *Chen v. Los Angeles Truck Ctrs., LLC*, 42 Cal. App. 5th 488, 495 (2019) (internal quotation marks and citations omitted). Under this test, the Court must apply Idaho's five-year statute, not California's four-year statute.

**First**, the relevant statute of limitations for breach of contract in Idaho and California are different. *Compare* Idaho Code § 5-216 (five-year SOL) *with* Cal. Civ. Proc. Code § 337 (four-

---

[12] While YMTC acknowledges California's governmental interest approach, it fails to address the test's three-part inquiry, merely concluding that California's SOL applies. Mot. at 13-14, n.8 (acknowledging California courts apply California law choice-of-law principles (i.e., governmental interest analysis) in an SOL conflict without additional argument). YMTC consequently waived further argument. *SEB Inv. Mgmt.*, 485 F. Supp. 3d at 1135. *Regents of Univ. of Cal. v. Chen*, cited by YMTC, did not conduct the governmental interest analysis because the alleged conduct occurred, and the parties were all based, in California, so no party had any reason to invoke the SOL of another state. No. 16-cv-07396-EMC, 2017 WL 3215356, at *1 (N.D. Cal. July 26, 2017).

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

-13-

MICRON'S OPPOSITION TO MOTION
TO DISMISS AND STRIKE
3:23-CV-05792-RFL

year SOL).  **Second**, there is no true conflict here, and only Idaho has an interest in applying its statute of limitations.  "Although the two potentially concerned states have different laws, there is still no problem in choosing the applicable rule of law where only one of the states has an interest in having its law applied" and the state's interest must be *real* rather than hypothetical.  *Chen*, 42 Cal. App. 5th at 496.  California has no real interest in applying its SOL here because Micron is an *Idaho* headquartered company, the ex-Micron employees worked in *Boise, Idaho*, the ex-Micron employees worked on and developed the technology with others at Micron in *Idaho* and these ex-Micron employees are not employed by the California YMTC entity.  Dkt. 68-3.  These ex-Micron employees reside in China and are associated with the Chinese YMTC entity.  While YMTC argues that California has an interest when "California's statute would bar a claim," that interest is hollow when "no California defendant is involved" and plaintiffs "seek to recover for injuries that occurred in a state in which the claim was not time-barred."  Mot. at 14, n.8, *Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482 (9th Cir. 1987); *see also Chen*, 42 Cal. App. 5th at 497.  **Third**, the final prong of this analysis confirms that Idaho's interest would be more impaired if its statute of limitations were not applied.  Idaho's five-year SOL is "designed to promote stability and avoid uncertainty with regards to future litigation."  *Stoltz v. Fry Foods, Inc.*, 60 F. Supp. 3d 1132, 1142 (D. Idaho 2014) (internal quotation marks and citations omitted).  Idaho has expressed a "fundamental policy by requiring strict adherence to its statutory limitations period [of five-years]" and has even forbidden any shortening of this five-year period by contract.  *Indus. Indem. Ins. Co. v. U.S.*, 757 F.2d 982, 988 (9th Cir. 1985).  Adopting California's SOL here would subvert Idaho's fundamental policy.  Thus, under California's government interest test, Idaho law applies here.

YMTC argues that Micron's "ownership claims as to the '254 Patent and '378 Patent accrued when the applications were published" on May 21, 2020, and November 7, 2019.  Mot. at 14.  Even accepting YMTC's timeline, Micron's claims are not time-barred under the proper (Idaho's) five-year SOL since Micron first asserted them within five years on October 22, 2024.

### 2. Constructive Notice Via Publication of a Patent Is a Fact Intensive Inquiry Not Suitable for Resolution on a Motion to Dismiss

Even if California's four-year statute of limitations applies (it doesn't), the question of

whether Counts IV and V are time-barred presents a question of fact inappropriate for resolution at the pleading stage.  While some cases note that issuance of a patent is "notice to the world for certain purposes, [they] do not support the conclusion that such issuance is notice for all purposes, including the statute of limitations." *Applera Corp.-Applied Biosystems Grp. v. Illumina, Inc.*, No. C 07-02845 WHA, 2008 WL 927963, at *1-2 (N.D. Cal. Apr. 4, 2008) (internal quotation marks and citations omitted); *see also Katz v. Avanir Pharms.,* No. 06cv0496 DMS (LSP), 2006 WL 8455483 at *1 (S.D. Cal. Sept. 11, 2006); *Versata Software, Inc. v. Configit A/S*, No. LA CV20-09019 JAK (MRWx), 2021 WL 5536287 at *5-6 (C.D. Cal. Sept. 10, 2021).  "[A] statute of limitations issue[]…is a question of fact, and hence, ***inappropriate for resolution on a 12(b)(6) motion***." *Katz*, 2006 WL 8455483, at *2 (emphasis added).  YMTC's cited cases do not support dismissal at this stage.  In *Wang,* the court found **on summary judgment** that the plaintiff had reasonable suspicion of misappropriation because he knew his ex-founder defendant breached their "non-disclosure agreement when he violated his agreement to return the documents containing Wang's alleged trade secrets," knew that his ex-founder defendant went to work for defendants' company, and knew that his ex-founder defendant "never asked for relief from his duty to return the trade secrets," so should have inquired further.  *Wang v. Palo Alto Networks*, *Inc.*, No. C 121-05579 WHA, 2014 WL 1410346 at *7 (N.D. Cal. Apr. 11, 2014); *Gen. Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1398 (9th Cir. 1991) (also on summary judgment and noting that "knowledge of the patent does not constitute constructive notice of appellant's claims against the defendants").  Unlike *Wang*, Micron pleaded that it "did not have reason to suspect that [any of the former employees] would utilize joint development work of MTI to apply for patents at [YMTC], did not have reason to monitor [their] post-employment patent activities, and therefore did not do so."  Am. Ans. (Am. Counterclaims) ¶¶ 20-44.  Thus, dismissal under California's (inapplicable) four-year statute of limitations is unwarranted.

## V.    CONCLUSION

For the foregoing reasons, Micron respectfully requests that the Court deny YMTC's Motion to Dismiss and Strike (Dkt. 177).

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

-15-

MICRON'S OPPOSITION TO MOTION
TO DISMISS AND STRIKE
3:23-CV-05792-RFL

Dated:  December 6, 2024

ORRICK, HERRINGTON & SUTCLIFFE LLP


By:  _____ /s/ Jared Bobrow _____
Jared Bobrow
*Attorneys for Defendant and Counterclaim*
*Plaintiff Micron Technology, Inc., and*
*Defendant Micron Consumer Products*
*Group, LLC*

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

MICRON'S OPPOSITION TO MOTION
TO DISMISS AND STRIKE
3:23-CV-05792-RFL